**1. RAILROADS—CONSTRUCTION—REQUISITES TO EXERCISE OF POWERS.**

Railroad Law, Laws 1892, p. 1395, c. 676, as amended by Laws 1895, p. 317, c. 545, § 59, provides that no railroad company shall begin the construction of its road until the board of railroad commissioners shall have certified that public convenience and necessity require the construction of the road as proposed in its articles of association, and that after the refusal of such a certificate, the directors of the applicant may present the application to a term of the Supreme Court, which shall have power in its discretion to order the board to issue the certificate. *Held* that, on an application to the court under the statute, the burden is not upon the applicant to show affirmatively that the commissioners committed error in their determination, but the matter comes before the court as an original application to be determined on the record made before the board of commissioners, if the parties so elect, or upon such further evidence as the court may deem essential.

**2. SAME—APPLICATION FOR CERTIFICATE OF NECESSITY.**

On an application to the court under the statute, great weight should be given to the decision reached by the board of commissioners.

**3. SAME.**

An application to the court, under the statute by a corporation organized to construct a trolley road, should not be denied, though the proposed road will parallel constructed steam railroads and reduce their earnings.

**4. SAME.**

Where, on an application to the court under the statute, it appeared that the proposed trolley road practically paralleled a steam railroad, and the roads of other trolley companies to a considerable extent, and that if established it would injuriously affect such other roads, but it was shown that considerable portions of the territory in question had practically no railroad facilities, and a large number of people residing in close proximity to the route of the proposed road testified unqualifiedly that the operation of the road was a public convenience and necessity, and it was shown that such opinions had foundation in the infrequency of trains upon the railroads, and the long distances which it was necessary to travel to reach stations on such roads, and that no witness

residing along 104 miles of the proposed route expressed any contrary opinion; notwithstanding that certain experts testified to the contrary, the facts called for the granting of a certificate.

Application by the directors of the Rochester, Corning, Elmira Traction Company for an order directing the board of railroad commissioners to issue a certificate of public convenience and necessity under Railroad Law, § 59 ; the board having refused to grant such a certificate on application to it. Application granted.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Stephen A. McIntire (William A. Sutherland and Erwin E. Shutt, of counsel), for directors.

George N. Orcutt (George F. Brownell, of counsel), for Erie Railway Company.

Reynolds, Stanchfield & Collin (Frederick Collin, of counsel), for Delaware, Lackawanna & Western Railroad Company; Corning & Painted Post Railway Company; and Elmira, Corning & Waverly Railway Company.

Harris & Harris, for New York Central & Hudson River Railroad Company.

Herendeen & Mandeville (E. G. Herendeen, of counsel), for Elmira Water, Light & Railroad Company.

McLENNAN, P. J.  The Rochester, Corning, Elmira Traction Company was incorporated in July, 1906, for the purpose of constructing and maintaining and operating by electricity a street surface railroad from the city of Rochester in the county of Monroe to the city of Elmira in the county of Chemung, a distance of about 120 miles, passing through a portion of the county of Monroe, also through Livingston and Steuben counties and a portion of Chemung county.  Thereafter application was made to the board of railroad commissioners for a certificate of public convenience and a necessity, and, after numerous hearings, at which a large amount of testimony was taken, and on December 5th, 1906, the board by a majority vote, two members dissenting, refused to grant such certificate.  Thereafter all papers (including a copy of all evidence taken), maps, and findings of the board were duly certified.  Thereafter, and on the 9th day of January, 1907, by order to show cause returnable on the 28th day of January, 1907, the matter was brought into this court to determine upon the record thus made whether or not a certificate of public convenience and a necessity should issue to the applicant pursuant to section 59 of the railroad law.  Laws 1892, p. 1395, c. 676, as amended by c. 545, p. 317, Laws 1895.  We think the practice adopted to bring the matter to this court was correct.  The counsel who appear for the several corporations in opposition to the application insist that this court should regard the application as in the nature of a review of the decision of a subordinate tribunal, and not as an original application, and, therefore, that the burden rests upon the petitioners to show affirmatively that the commissioners erred in their determination.  We are inclined to follow the rule laid down in Matter of Wood, 99 App. Div., 334, 91 N. Y. Supp. 225, affirmed 181 N. Y. 93, 73 N. E. 561, and to hold

that the matter comes before this court as an original application ·to be determined upon the record made before the board of railroad commissioners if the parties so elect, or upon such further evidence and facts as the court might deem essential in order to enable it to make a proper determination in the premises. However, we deem that question of but little importance in this case, because the entire evidence taken before the board is before us without objection, and no request. was made by either party to submit further proof for our consideration. So that the matter should be decided solely upon the merits as disclosed by all the proceedings had before the commissioners, including the evidence taken, the decision rendered by them, and the reasons given therefor.

The application for a certificate was denied by the board of railroad commissioners, upon the ground, as appears by the opinion of the majority of the board, that the people residing in the territory through which it is proposed to construct and operate the applicant's railroad are now reasonably well supplied with transportation facilities by means of the operation of the steam railroads and other electric roads which traverse practically the same territory, each of which is represented by counsel in opposition to this application; and especially because such railroad companies have already undertaken, or are about to undertake, to furnish additional facilities by electrifying some of such lines and otherwise. It would not be useful to describe in detail the precise location of the proposed railroad, or just the relation it would sustain as to location to the other roads mentioned. Suffice it to say that it practically parallels the Erie Railroad, or some of its branches, for substantially its entire length, and the roads of the other companies appearing in opposition to a considerable extent, and it is established beyond contradiction that such proposed new road, if constructed and operated, would injuriously affect such opposing companies. That being so, if the people residing in the territory in question are now reasonably well accommodated as· to transportation facilities, and if such is the fact established by a fair interpretation of the evidence, the board properly refused a certificate.

In determining what conclusion this court should reach in the premises, we are of the opinion that great weight should be given to the decision reached by the board. People ex rel. N. Y. N. H. & H. R. R. Co. v. Commissioners, 81 App. Div. 242, 81 N. Y. Supp. 20. It, however, becomes the duty of this court to examine the evidence, and to determine whether public convenience and necessity require the construction and operation of the proposed road. While the fact that the territory is now occupied by other railroads should properly be considered, it should in no sense be regarded as controlling. Practically every suburban electric railroad authorized in this state paralleled an existing steam railroad. The larger percentage of the population settled upon the lines of such railroads, and at almost every station a hamlet, village, or city, had grown up, and yet that has not been regarded as a valid objection to the construction of a street surface railroad along such route, through such hamlets, villages, and cities. Probably no section of our country is better supplied with steam railroad facilities than is Central New York by the New York Central Railroad

from Albany to Buffalo. Yet trolley lines have been authorized, and are nearly completed, which will furnish a continuous line between said points. So practically all the branches of the New York Central System have been paralleled by trolley lines.

In such cases the question was not whether the through transportation facilities between termini or even between the larger cities were adequate, but whether the people living along the line of such steam railroad, and between its stations, required additional facilities. Indeed, between points a long distance apart the trolley roads do not compete with the steam roads. The passengers and freight which the former carry are, as a rule, carried to the stations of the latter. In all essential respects the two serve separate purposes, each equally necessary to the convenience of the public. This policy has been adopted by the board of railroad commissioners so uniformly that it may be regarded as the settled policy of the state, to wit, to permit steam railroads to be paralleled by trolley roads, however ample the facilities furnished for travel by such steamroads between terminal points or between principal stations, and so notwithstanding such trolley road may reduce the earnings of the steamroad. The primary purpose of a trolley road is to convey people directly from their homes to the nearby villages or cities or vice versa. In the case at bar the situation is essentially no different than as above indicated. The facilities for through passenger and freight transportation between Rochester and Elmira and between Elmira and Corning are reasonably adequate, and it would not be claimed that another through line is necessary; but the evidence demonstrates that the facilities for local traffic are wholly inadequate upon the entire route, except between Corning and Elmira, that trains are run infrequently, that the stations are comparatively long distances apart, and that a considerable portion of the territory is not accommodated by the existing railroads, which will be no more closely paralleled by the proposed railroad than such railroads usually have been by such construction in other parts of the state. It is said that along a considerable part of the route the country is sparsely settled, and that a sufficient patronage cannot reasonably be expected to justify the expenditure necessary to construct and operate the proposed road. Experience has demonstrated, and additional transportation facilities have greatly increased, the use of such facilities; and the applicant directors apparently in good faith assert their willingness and ability to obtain the necessary capital to construct and equip the road. The fact that the Erie Railroad Company proposes to electrify its road does not materially alter the proposition. That does not mean that it is to be converted into a street surface railroad, but, rather that the motive power for the transportation of passengers will be changed from steam to electricity. Regular trains, passenger and freight, will be run then, as now, must be run on schedule time, and will only stop to take on or let off passengers at the regular stations. The passenger trains may run more frequently, but with all the changes suggested the people along the route will not have such facilities as is understood will be afforded by a street surface railroad. The evidence shows that the population to whom the line of the proposed road would be reasonably accessible averages between 400 and 500 per mile, not including the population

of either Rochester or Elmira, and the evidence very conclusively shows that such population have at the present time very inadequate transportation facilities along the greater part of such route. That fact becomes apparent upon examination of the time-tables of the existing roads. As before suggested, it does not necessarily follow that the present facilities for. through traffic between the termini are not reasonably adequate; but it can hardly be contended that the local demand had been reasonably met. And it is established beyond doubt that with additional accommodations the demand would be largely increased. In addition it is true that considerable portions of the territory through which it is proposed to operate the road in question have practically no railroad facilities. We think the evidence fails to show that such conditions will be materially changed even after all the improvements which are under way or are contemplated by the opposing companies have been made. When all is completed practically none of the facilities offered by a street surface railroad, if properly operated, would be afforded to the inhabitants of the territory in question.

Whether or not the proposed road is a public convenience and a necessity is and must be a matter of opinion. Absolutely accurate demonstration is impossible. So that after all we must look for its solution in the opinion of witnesses. A very large number of people residing in close proximity to the route of the proposed railroad, and who are apparently familiar with the locality, the existing conditions, and the needs of the inhabitants, state unqualifiedly under oath that in their opinion the construction and operation of the proposed road is a public convenience and a necessity. Such opinions are fortified by reasons which appeal to us as being forceful, viz., the infrequency of trains upon the steamroads, the long distances which it is necessary to travel to reach the stations on such roads, and that with increased facilities the travel will increase. No witness residing along the proposed route between Rochester and Big Flats, a distance of 104 miles, was called who expressed a contrary opinion. Indeed, it may almost be said that the people residing in the territory affected are practically unanimous in the opinion that the road is a public convenience and a necessity. Certain experts called by the opposing railroads, men apparently of the highest character and of large experience testify that, in their opinion, said road would not be a public convenience and a necessity, and they fully state their reasons for such conclusion. An expert called by the applicant expresses the contrary view.

We have examined all the evidence with very great care, and we are forced to the conclusion that the weight of it is largely in favor of the applicant's contention, and that a certificate of public convenience and a necessity should be granted. We think that any other result would be at variance with the policy long adopted by this state, as evidenced by a long line of decisions made by the board of railroad commissioners which have been approved by the courts, several of which are referred to in the dissenting opinion of two members of the board, which is made a part of the record in this case. From Albany to Buffalo street surface railroad companies have been authorized to construct their roads within sight of the railroad of the New York Central for practically the entire distance, and so, although upon such road passen-

ger trains are run in each direction hourly or oftener. It was not considered an objection that such new road would reduce the revenue of the old, or that it had ample facilities to accommodate a much larger traffic. We fail to see how a distinction can properly be made as between such cases and the one at bar. We more readily reach the conclusion above indicated, because of the reasons set forth in the dissenting opinion of the commissioners. Each of those dissenting had the same technical knowledge, was at least equally familiar with the conditions, and with the needs of the people residing in the territory affected, with either of those who joined in the opinion filed by the majority of the board.

Upon the whole evidence, and, after giving full consideration to the many suggestions of able counsel, we conclude that the order applied for, directing the board of railroad commissioners to issue a certificate of public convenience and a necessity, should be granted, but without costs. All concur.