PEOPLE ex rel. BATH & H. R. CO. v. PUBLIC SERVICE COMMISSION OF SECOND DIST. OF NEW YORK et al.

(Supreme Court, Appellate Division, Third Department. June 18, 1908.)

1. RAILROADS—ORGANIZATION—CERTIFICATES OF NECESSITY AND CONVENIENCE —CONDITIONS PRECEDENT.

   Before issuing a certificate of necessity and convenience for a railway, as provided by Railroad Law, Laws 1890, p. 1083, c. 565, as amended by Laws 1892, p. 1383, c. 676, § 2, subd. 13, it is the duty of the board of railroad commissioners to ascertain whether the alleged railroad company is duly incorporated, and, if the 10 per cent. of the minimum amount of capital stock required has not been subscribed and paid in good faith in cash, the certificate should be denied.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Railroads, § 8.]

2. SAME—ACTIONS—EVIDENCE—ADMISSIBILITY.

   In proceedings before the board of railroad commissioners to secure a certificate of necessity and convenience, under the railroad law, which requires that 10 per cent. of the minimum capital stock be paid in good faith in cash before the issuance of such certificate, the only evidence of such payment was that the directors called at the bank the day before the certificate of incorporation was filed, and deposited $50,000, which was accredited to them as directors of the road, and at a meeting of the directors thereafter the president stated that that amount had been deposited, and suggested that it remain there until by-laws had been adopted designating a proper place for the funds, which was done by resolution of the board. The director who deposited the money was asked, for the purpose of determining whether there had been a payment of 10 per cent. in good faith, if the company or directors had previously made any arrangements with the bank regarding the money, or had given their obligations in order to obtain the money, which questions were excluded. Held, that while the board of railroad commissioners is not subject to the same rules in admitting evidence as the courts, and their proceedings should not be vacated for erroneous rulings in rejecting evidence, unless such evidence was material and controlling, the questions as to deposits made by the directors might have shown that the deposit was subject to obligations given by the directors or the company, in which event it would not have been made in good faith. as required by the railroad law, and hence their exclusion was reversible error.

3. BANKS AND BANKING—DEPOSITS—APPLICATION TO DEBTS DUE BANK.

   Even though a railroad company was not organized and had no legal directors, when its nominal directors deposited the amount in a bank as a condition precedent to incorporation, if an obligation had been given to the bank in the name of the company, or of the directors, and the same money was deposited in the bank to the credit of the directors, the bank could charge the obligation against the deposit and thus extinguish it; the bank having no knowledge that the deposit was made for the purpose of circumventing the railroad law.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Banks and Banking, § 353.]

   Chester and Sewell, JJ., dissenting.

Certiorari by the people of the state of New York, on the relation of the Bath & Hammondsport Railroad Company, against the public

service commission of the Second district of the state of New York, and Frank W. Stevens and others, comprising the public service commission of the State of New York, and another, to review the proceedings of the board of railroad commissioners in granting a certificate of convenience and necessity under section 59 of the railroad law (Laws 1892, p. 1395, c. 676). Determination granting the certificate annulled.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

Orcutt, Robbins & Brown (Floyd F. Greene, of counsel), for relator.

Milo M. Acker, for respondent.

JOHN M. KELLOGG, J. It is the duty of the board of railroad commissioners to ascertain and determine whether the alleged railroad company is duly incorporated. If the 10 per cent. of the minimum amount of capital stock has not been subscribed and paid in good faith and in cash, the certificate should be denied. People ex rel. Leonard v. Board of R. R. Com'rs, 105 App. Div. 273, 93 N. Y. Supp 584; People ex rel. N. Y. C. & H. R. R. R. Co. v. Pub. Serv. Com. 122 App. Div. 283, 106 N. Y. Supp. 968.

The only evidence tending to show the payment of such 10 per cent. is that three of the directors called at the Bank of Steuben, in Hornell, and one of them produced $50,000 in currency and gold, which was counted by the other two and handed over to the receiving teller of the bank for deposit, for which the teller gave them a bank book giving credit therefore to the three persons, "as directors of the Hornell, Bath & Lake Keuka Railroad Company." This took place the day before the certificate of incorporation was filed. At the first meeting of the board of directors, a few days afterwards, the president stated that the $50,000 paid in to the directors had been deposited in the Bank of Steuben to the credit of the three directors, and suggested that it remain there until the by-laws of the company were adopted, designating the proper custodian of the funds and defining his duties, whereupon a resolution was passed that the funds of the company remain on deposit, as stated by the president, until further action is taken by the board regarding the same.

The relator called as a witness the director who produced the money at the bank, and who had subscribed for $20,000 of stock in the company, and inquired if the company or himself had made any previous arrangements at the bank in relation to the money; also if the company at any previous time, or any of its directors, issued or gave their obligations for the purpose of obtaining the money; also if the money had previously been borrowed by the company from the same bank—which evidence was objected to and excluded. Thereupon counsel stated that the object of the question was to investigate and ascertain whether there was a payment of 10 per cent. in good faith, and to ascertain the history of the transaction, whether it was really a paper transaction whereby the company in reality did not obtain $50,000 without outstanding obligations against it, or whether it was

in fact a payment whereby the treasury of the company became augmented to that extent; and he then again renewed the first question, whether the company or the director had made any previous arrangement at the bank in relation to the money, which was excluded. Exceptions were taken to all of the rulings excluding this class of testimony.

Notwithstanding the fact that $50,000 stood upon the books of the bank to the credit of the three directors as such, it does not follow that as between them and the bank, or between the company and the bank, the money so deposited was the unqualified property of the railroad company. The relator sought to show that the persons in whose names the deposit was made had incurred an obligation at the bank for the amount of money which was returned to the bank, or that such obligation had been made in behalf of the company. It is evident that if this money had been obtained at the Bank of Steuben by the three directors, with the understanding that it was to be deposited in their name, but was not to be withdrawn until the obligation which the bank received for the money was fully paid, or that the bank might apply it at any time to the payment of such obligation, as between the directors and the bank, or the company and the bank, the money was not the free property of the company, but was subject to the obligation to the bank given therefor. It is not claimed that the bank had knowledge or notice that this deposit was to be made to circumvent the law, or for what particular purpose it was made. Therefore the bank would not be estopped from claiming that as between it and the directors, or it and the company, the money should not be paid for the company until the obligation was paid upon which the bank advanced it. We must assume, in determining the materiality of the evidence offered, that the result would have shown that the bank held an obligation of the directors or company for a corresponding amount, and that it would have appeared that the money could not be withdrawn from the bank, except to pay the obligation or after its payment. If such facts could have been shown, then the alleged payment of the 10 per cent. was purely a paper transaction, and was not a payment in good faith in cash. It is true that at the time of the deposit there was not in fact any organized company which could give its note. Neither were there any legal directors of the company. But if an obligation had been given in the name of the company, or in the name of the three directors as such, and the same money deposited to the credit of the three directors or of the company, the bank could hold the money as a legal offset to the obligation, or could charge the obligation against the deposit, and thus extinguish the deposit.

Ordinarily the board of railroad commissioners is not subject to the same rules as to the admission of evidence as applies in a court of justice, and their proceedings should not be vacated for an erroneous ruling in rejecting or receiving evidence, except where such evidence might be controlling. But, where material and convincing evidence is offered tending to show that the 10 per cent. has not been paid actually and in good faith in cash, the exclusion of such evidence is error and calls for a reversal of their determination. It in effect held that, no matter how the director came into possession of the $50,000,

whether it was upon the company's note or the note of the three directors, the fact was immaterial so long as the deposit was made in the name of the three directors. If the questions asked had been answered, and the answers were favorable to the relator, as we must assume they would have been for the purpose of determining the materiality of the questions, it might have conclusively appeared that the railroad company had no right to the $50,000 as against the bank, and that as between the company and the bank, or the three directors and the bank, the latter had a perfect defense to it, and that in fact no moneys had been paid in cash for the company.

The determination appealed from should therefore be anulled, with $50 costs and disbursements, to be paid by the respondent railroad company. All concur, except CHESTER and SEWELL, JJ., who dissent.

CHESTER, J. (dissenting). The evidence clearly sustains the finding of the board of railroad commissioners that convenience and a necessity require the construction of the railroad in question, but the prevailing opinion advises that that determination shall be annulled, not on the ground that it is against the weight of evidence, but because the board of railroad commissioners erred in the exclusion of certain offered testimony with respect to whether or not 10 per centum of the capital stock had been paid in good faith to the directors named in the certificate of incorporation. Affixed to such certificate was the affidavit of three directors, named in the certificate of incorporation, in conformity with the requirements of subdivision 13 of section 2 of the railroad law (Laws 1890, p. 1083, c. 565, as amended by Laws 1892, p. 1383, c. 676), that at least $1,000 of capital stock for each mile of road built or proposed to be built as stated in the certificate, being at least 10 per centum of the minimum amount of capital stock authorized by law, has been subscribed thereto and paid in good faith and in cash to the directors named in the certificate. This affidavit was supplemented on the hearing by testimony showing that on the 23d day of January, 1907, there was paid to said three directors $50,000 in cash, and the same was thereupon deposited by them in the Bank of Steuben to their credit as the directors of said company, whereupon such bank issued to them a pass book showing such deposit and such credit. The pass book showing the credit was put in evidence. It was shown that at the time of the hearing such deposit still remained in the same form in which it was entered in the pass book, and the minutes of the first meeting of the board of directors of such company showed that a resolution was passed requiring said funds to remain on deposit until the by-laws of the company had been adopted designating the proper custodian or custodians of the funds of the company and defining his or their powers and duties. All this was clear and convincing evidence that the required amount of capital stock had in fact been paid in in good faith and in cash to such directors, and that they still held it for the company.

The board of railroad commissioners were not governed by such strict rules of law as are the courts in the reception or rejection of evidence, and it is not surprising that they were convinced by the evidence, both oral and documentary, presented in relation thereto, of the

good faith of the transaction in question. After being so convinced, it was evident that they did not desire to prolong the examination with respect to it. The testimony which was excluded did not show or tend to show that the money in question was not in fact subscribed. It was aimed at finding out from what source the money came, or to prove that the company or some of its directors had incurred some obligation to procure it. Those matters were immaterial, so long as the money had been properly subscribed and deposited to the credit of the directors named in the certificate. The company could not incur an indebtedness. Nor was it important to show that the directors as individuals had incurred some obligations in procuring the money; for, if they had, it was their personal obligation, and was not the debt of the company, for the company had not yet been fully organized, so that it could exercise its corporate powers, and could not, therefore, incur any indebtedness. Neither could these moneys so deposited be applied to any other uses or purposes than to the uses and purposes of the company when the time came when it could exercise its corporate powers. If the individual incorporators misapplied these funds, they would be guilty of a breach of trust, and would be individually liable therefor. I think, therefore, the ruling of the board of railroad commissioners in excluding the testimony was correct; but, even if such exclusion should be held to be technical error, I do not think, with the clear and convincing testimony of good faith presented, that it should be regarded as reversible error which should result in the annulment of the certificate in question.

I therefore advise the affirmance of the determination, with $50 costs and disbursements.

SEWELL, J., concurs.