---

In re BUFFALO FRONTIER TERMINAL R. CO.

(Supreme Court, Appellate Division, Fourth Department. March 3, 1909.)

1. RAILROADS (§ 7*) — DETERMINATION AS TO NECESSITY — EVIDENCE — SUFFICIENCY.

Evidence presented before the State Railroad Commission *held* to warrant the issuance of a certificate of convenience and necessity to the petitioner under section 59 of the railroad law (Laws 1895, p. 317, c. 545).

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 8; Dec. Dig. § 7.*]

2. RAILROADS (§ 9*)—DETERMINATION AS TO NECESSITY—REVIEW.

On review of the determination of the State Railroad Commission not to issue a certificate of convenience and necessity for the construction of a belt line for freight around a city connecting different railroads, affidavits were presented showing that since the hearing before the commission one railroad is constructing a switching yard of great capacity and laying additional track along its passenger belt line which would soon be available for interchanging freight among the various railroad lines, and that other improvements by new lines are under way tending to obviate the necessity for new proposed lines. It also appeared that a rival company was granted a certificate which, except for objection which induced a reversal as to its certificate on certiorari, may be equally well equipped and located to satisfy the necessity, if it has since eliminated the objections, and may be entitled to the certificate. *Held* that, notwithstanding the evidence before the Railroad Commission entitled petitioner to a certificate, the case would be remanded to the

Public Service Commission, its successor under Laws 1907, p. 937, c. 429, for a rehearing on present conditions.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 19; Dec. Dig. § 9.*]

3. RAILROADS (§ 9*)—DETERMINATION AS TO NECESSITY—REVIEW.

The court, on review of proceedings on an application for the issuance of a certificate of convenience and necessity for a railroad, having power to direct the Public Service Commission, the body possessing original jurisdiction, to issue the certificate, may also remit the matter for a rehearing to that body.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 19; Dec. Dig. § 9.*]

4. APPEAL AND ERROR (§ 1106*)—REVIEW—POWER TO REMIT—SCOPE AND EXTENT.

The power to remit a case for any purpose must carry with it the authority to determine in what manner and for what purpose the submission is made.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4386–4398; Dec. Dig. § 1106.*]

5. RAILROADS (§ 9*)—DETERMINATION OF NECESSITY—PROCEEDINGS OF RAILROAD COMMISSION—JURISDICTION TO REVIEW.

Whether the determination of the Board of Railroad Commissioners as to the necessity for a railroad is administrative or judicial, the power of the Supreme Court to review its decision has been exercised for so long a time that it is not an open question.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 19; Dec. Dig. § 9.*]

McLennan, P. J., dissenting.

Application by the Buffalo Frontier Terminal Railroad Company to the State Railroad Commission for an order directing a certificate of public convenience and necessity under section 59 of the railroad law. The petition was refused, and, on request of the company's directors, the maps, plats, and testimony on file in the proceeding before the Board of Railroad Commissioners were certified to the Supreme Court, and an order was granted requiring the parties to show cause why an order should not be granted directing the Public Service Commission of the Second district to issue the certificate to petitioner pursuant to law. Determination of the Board of Railroad Commissioners set aside, and a rehearing ordered before the Public Service Commission of the Second district.

The petitioner was organized as a railroad corporation in January, 1904, for the purpose of building and operating a steam railroad of standard gauge from a point on Lake Erie 1½ miles south of Buffalo, and in the town of Hamburg, to the Niagara river, in the town of Tonawanda, a distance of about 28 miles. The road designed was outside of the city of Buffalo, passing on three sides of said city, and crossing the tracks of all the trunk lines entering the city, and its object was to facilitate the interchange and transportation of traffic in and about the city of Buffalo among the many railroads with which it was intended to be connected. The application was made to the State Railroad Commission for the certificate of convenience and necessity, which was refused August 10, 1904. After the lapse of a year a like application was again made to said commission, and after an extended hearing the petition was again refused by a divided vote of the members of the commission December 16, 1906. Upon the request of the directors of said corporation, the Board of Railroad Commissioners on the 26th of June, 1907,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

certified a copy of all the maps, papers, and testimony on file in said proceeding. Upon the application of the appellant an order directed to all the parties appearing was granted by this court on the 10th of November, 1908, requiring them to show cause before this court on the 5th of January, 1909, "why an order of this court should not be made directing the Public Service Commission, Second district, forthwith to issue to the Buffalo Frontier Terminal Railroad Company a certificate of public convenience and a necessity under and pursuant to sections 59 and 59a of the railroad law." The parties appeared in response to this order, and arguments have been had upon the record transmitted from the Railroad Commission, and also upon affidavits which have been submitted.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Edward W. Hatch and Joseph G. Dudley, for petitioner.

Clarence M. Bushnell, for Niagara Transfer Ry. Co. and Buffalo, L. E. & N. R. Co.

Lewis E. Carr, for Buffalo, L. E. & N. R. Co.

Louis L. Babcock, for Delaware, L. & W. R. Co.

Charles A. Pooley, for New York Cent. & H. R. R. Co.

Kenefick, Cooke & Mitchell, for Lehigh Valley R. Co.

Moot, Sprague, Brownell & Marcy, for Erie Ry. Co.

Pooley & Spratt, for Lake Shore R. Co.

Ledyard P. Hale, for Public Service Commission, Second District.

SPRING, J. Within a few days after the hearing before the Board of Railroad Commissioners commenced, the Buffalo, Lake Erie & Niagara Railway Company was permitted to intervene. This company was duly organized, and had projected a terminal railroad through the same general territory and following to a considerable degree the course of the petitioner, except that its easterly line was nearer the city than that of the petitioner's. Each company had a like purpose, and a certificate to one would in all probability result in the denial of it to the other.

In December, 1902, the Niagara Transfer Company was incorporated as a switching road through the northerly part of this same territory, and designed also for the transmission of traffic and merchandise over certain railroads of the city. It also was organized primarily to bring into availability for shipping and manufacturing purposes a large tract of land with a four-mile frontage on Niagara river north of the city. A certificate was granted to it by the Board of Railroad Commissioners August 10, 1904. The determination of the board, upon a review by writ of certiorari, was reversed by the Appellate Division, Third Department (103 App. Div. 123, 93 N. Y. Supp. 58); and its decision was affirmed by the Court of Appeals (184 N. Y. 575, 77 N. E. 1194). Pending this appeal, and in June, 1905, the Buffalo, Lake Erie & Niagara Railroad Company was organized, and comprised substantially the same stockholders as the Niagara Transfer Company referred to.

Upon the hearing of the proceeding now under review, a large amount of proof was taken by the Board of Railroad Commissioners, bearing, first, upon the propriety of granting any certificate at

all, and, second, upon the respective merits of the two applicants appearing before the board. The railroad companies now operating in the city of Buffalo gave proof tending to show that upon the consummation of the plans already devised, and some of which were in course of fulfillment, adequate facilities would be provided to take care of all the enormous freight business of the city, including whatever was interchanged at that point in order to reach its destination. There are tracks of 13 different railroad companies entering the city of Buffalo, and they own vast tracts of valuable land and many hundreds of miles of switch and freight trackage in the city. The title to the extensive harbor and water frontage adjacent to the city is in the railroad companies, so that there is no opportunity for the location of a manufacturing plant or business enterprise requiring a large site along the lake or river within the city; and the proof tends to show that industrial organizations of magnitude have been prevented from locating in the city for the reason that there was no vacant property available for the operation of their plants.

Again, it appears that there has been of late years much congestion of traffic, both of that coming into the city by the lake, and also where transshipment from one steam road to another is required, and consequent expensive delays have been frequent. One witness, testifying as to the difficulty of disembarking merchandise in the harbor, said that in the fall preceding 130 vessels were delayed in unloading from 2 to 24 days.

The Buffalo Creek Railroad in the city of Buffalo is a connecting terminal railroad 4¼ miles in length. The proof tends to show that it is inadequate to take care of the freight business of the connecting roads. It also appears that the land adjacent to its tracks is mainly taken up by elevators and industrial plants and enterprises, and there is little available space for other projects to be developed.

It is the contention of the petitioner and also of the competing company that a terminal railroad connecting with all the railroad lines devoted principally to the business of interchanging freight and traffic for a small charge would forward the merchandise without delay, and be able to take care of all which would otherwise be stalled in the city. Evidence was given to fortify this position by men engaged in the railroad business, and who testified to similar lines in other cities, and that the effect had been to facilitate the expeditious movement of freight. Again, it was claimed on their behalf that both north and south of Buffalo ample facilities of water frontage would be afforded, and that any large plant might be located with a terminal line connecting with all the trunk lines, so that it would not be at the mercy of one railroad in the shipment of its output; and it is urged that the inability to obtain locations accessible to competing lines has been a great obstacle to the growth of the city.

We do not deem it necessary to go into the evidence in any more detail. Suffice it to say, there was abundant evidence, as conditions then prevailed, to warrant the decision that a terminal road was

essential. In fact, there was very little controversy over the conditions which existed. The opposing companies gave proof tending to show that the plans projected, with the concurrence of all the various companies, would remedy the congestion of traffic prevailing; and, further, that neither of the competing terminal roads, if completed, would afford relief to the extent which would result from the consummation of the plans already devised by the existing companies.

The members of the commission were unanimous in the determination that the certificate of public convenience and necessity should be granted to one or the other of the two applicants. The difference arose over the merits of the two projected lines. The certificate was finally granted to the Buffalo, Lake Erie & Niagara Railroad Company, three of the commissioners joining in the decision, while two dissented, favoring the petitioner. Writs of certiorari were sued out, and the determination was reversed (People ex rel. Sawyer v. Board of R. R. Com'rs of New York, 128 App. Div. 814, 114 N. Y. Supp. 122) upon the court's previous decision already adverted to, and for the further reason that the proposed route would interfere with and obstruct improvements which the national government has under way in the vicinity of Black Rock, north of Buffalo.

The affidavit of Mr. Bushnell, presented on the argument of this proceeding, shows that on the 31st of December, 1908, the Buffalo Connecting Railway Company was organized in the interest of the Buffalo, Lake Erie & Niagara Railroad Company, and its contemplated route is the same as that of its predecessor south and east of the city, but it is claimed its course north of the city has been changed to obviate the objections assigned for the reversal of the determination of the Board of Railroad Commissioners.

Application has been made by this company to the Public Service Commission, Second district, for a certificate of necessity in pursuance of section 53 of the Public Service Commissions law (chapter 429, p. 920, Laws 1907). If we were considering the refusal of the Board of Railroad Commissioners to grant the certificate to the petitioner untrammeled by other conditions, some of which have been enumerated, we would set aside that decision and order the certificate to issue. The evidence justifies the determination that in the situation presented to the board there was a paramount necessity for the issuance of a certificate to one or the other of the two rival companies. If we should review the application as an original one on the record before the Railroad Commissioners, as was done in the Matter of the Rochester, Corning & Elmira Traction Company, 118 App. Div. 521, 102 N. Y. Supp. 1112, we should also conclude that the petitioner was entitled to the certificate, if there were no competitor for the certificate.

There are, however, several influential reasons which deter us from directing the certificate to issue. The decision of the Board of Railroad Commissioners was made in December, 1906. In an affidavit presented on the argument in this proceeding, it appears that

the New York Central & Hudson River Railroad Company is constructing a switching yard of great capacity, and which will in a large measure enable it to handle expeditiously the traffic and merchandise which otherwise would be delayed in transportation. That company already has a passenger belt line extending around the city. It is now engaged in constructing two additional tracks along this line, with heavy equipment, which will soon be available in interchanging freight among the various railroad lines. Other improvements are alleged to have been made by other trunk lines, all tending to do away with the necessity of any switches or terminal road of any independent companies to take care of the freight business or traffic which is to be distributed or shipped from the city.

Again, the certificate was granted to the rival company. Except for the objections which induced the reversal of the determination, that company may have been equally well equipped and located to satisfy the necessity as the petitioner. If the succeeding company has, in the location of its route, eliminated the objections which operated against its predecessor, it may be entitled to the certificate rather than the petitioner. We allude to these conditions not for the purpose of passing judgment upon the propriety of granting any certificate as conditions now are, nor to give any intimation as to the relative merits of the competing companies, but in order to explain our decision to submit the whole matter to the body which is especially delegated with authority to determine applications of this kind.

By chapter 429, p. 889, of the Laws of 1907, the Board of Railroad Commissioners was abolished, and the Public Service Commissions created and invested with large power over public service corporations, and the law became effective July 1, 1907. By section 53 of this act no railroad corporation is permitted to begin the construction of a railroad without a certificate of public convenience and a necessity granted by the commission. Nor may any railroad corporation exercise any franchise "without first having obtained the permission and approval of the proper commission." In emphasizing and defining its authority, the act proceeds:

"The commission within whose district such construction is to be made * *. * shall have power to grant the permission and approval herein specified whenever it shall after due hearing determine that such construction or such exercise of the franchise or privilege is necessary or convenient for the public service."

We do not deem it necessary to determine the question of the power of this court to order the Public Service Commission to issue a certificate of necessity to the petitioner. As bearing upon this subject, see, however: Village of Ft. Edward v. Hudson Valley R. R. Co., 192 N. Y. 139, 84 N. E. 962; Matter of Wood, 181 N. Y. 93, 73 N. E. 561; Matter of Rochester, Corning & Elmira Traction Co., 118 App. Div. 521, 102 N. Y. Supp. 1112; section 85, Public Commissions law (Laws 1907, p. 937, c. 429); section 59 of Railroad law (Laws 1895, p. 317, c. 545).

Passing the question of power, we think such an order would be

an unwise exercise of discretion in view of the conditions existing. One rival company has already applied to that body for such certificate, and, if granted, it might render permission to the petitioner improper or unnecessary. The Board of Railroad Commissioners, believing a certificate should be granted, issued it to another competing company. The affidavits tend to show that conditions affecting the operation of railroads and the transportation of freight have materially changed since the determination made more than two years ago.

It is a matter of current knowledge that the Public Service Commission of the Second district has been devoting much time to the consideration of the many problems connected with the operation of the railroads in and about the city of Buffalo. It has the opportunity of frequent inspection of conditions prevailing, and is especially equipped for the solution of questions involving railroad construction and operation. We have no doubt as to the power of this court to relegate this matter to that body for investigation and determination. The petitioner asks that this court direct the commission to issue the certificate. Assuming that can be done, the power must also be lodged in this court to remit the matter for a rehearing to the body possessing original jurisdiction. The mode in which this court transfers the proceeding to the commission, and what directions it may make, relate wholly to the procedure. The power to remit for any purpose must carry with it the authority to determine in what manner and for what purpose the submission is made.

In People ex rel. Bath & Hammondsport Railroad Company v. Public Service Commission et al., the Appellate Division annulled the determination of the Board of Railroad Commissioners (127 App. Div. 480, 112 N. Y. Supp. 133), and this decision was affirmed in the Court of Appeals, not yet reported. Upon application that court modified its order "so as to award a rehearing before the Public Service Commission," although the determination reversed was made by its predecessor, the Railroad Commission.

It is urged with much earnestness that the determination of the Board of Railroad Commissioners is an administrative and not a judicial act, and this court has no power to review its decision. The power has been exercised for so long a time that it is not an open question, and we deem it unnecessary to enter into any discussion of the subject.

The determination of the Board of Railroad Commissioners should be set aside and a rehearing ordered before the Public Service Commission, Second district. So ordered, and without costs of this appeal to any party. All concur, except McLENNAN, P. J., who dissents in an opinion, and votes in favor of granting the application.

McLENNAN, P. J. (dissenting). I agree with the statement contained in the opinion of Brother SPRING that:

"The evidence is quite convincing that in the situation presented to the Board (of Railroad Commissioners) there was a paramount necessity for the

issuance of a certificate to one or the other of the two rival companies (the petitioner and the Buffalo, Lake Erie & Niagara Railroad Company). If we should review the (this) application as an original one, as was done in the Matter of the Rochester, Corning & Elmira Traction Company, 118 App. Div. 521, 102 N. Y. Supp. 1112, we should also conclude that the petitioner was entitled to the certificate."

But I think it should be held that the evidence presented to the Board of Railroad Commissioners conclusively established "a paramount necessity for the issuance of the certificate," and that this application should be regarded as was the application in the Rochester, Corning & Elmira Case, supra, because the additional facts presented by the affidavit do not in any material respect change the situation. The statements in the affidavit are to the effect that the various railroad companies whose lines enter the city of Buffalo are engaged in extending and increasing their terminal facilities so as to enable them to properly handle the freight which may come into the port of Buffalo; that great progress has been made by them in that direction since the hearing herein before the Board of Railroad Commissioners in 1906; and that the work so entered upon, and which entailed a very large expense, is now nearly completed, and that, when completed, ample shipping facilities will be afforded by them to all. There is no suggestion that the improvements which such railroad companies are making will add to the shipping facilities of those who own land upon the line of the proposed railroad, or those who might establish manufacturing plants or engage in other businesses along such line. It appears that the railroad which the petitioner asks to build is to traverse a section or territory well adapted to the location of large manufacturing plants and other industries, and that it has now no shipping facilities. The chief purpose of the petitioner is to create new and additional business by developing a large tract of country which cannot be developed until it is supplied with railroad facilities. In the Rochester, Corning & Elmira Case, supra, we held that it was not a valid objection to the granting of such a certificate that the new road would reduce the revenue of the old, or that the old road had ample facilities to accommodate a much larger traffic.

The railroad companies appearing object to the granting of the certificate in this case solely upon the ground that they now are or soon will be able to properly take care of all the freight which comes into or goes out of the city of Buffalo, and therefore such companies desire that they alone shall be permitted to handle such freight and receive the revenue therefrom. I think the objection is not tenable. It is not the rule that one locality or one portion of a city may be denied railroad accommodations because to give them would reduce the earning capacity of railroads which especially accommodate shippers in another locality or section. Justice SPRING says:

"The title to the extensive harbor and water frontage adjacent to the city is in the railroad companies, so that there is no opportunity for the location of a manufacturing plant or business enterprise requiring a large site along the lake or river within the city; and the proof tends to show that industrial organizations of magnitude have been prevented from locating in the city for the reason that there was no vacant property available for the operation of their plants."

The evidence not only tends to prove that such conditions exist, but the proof is wholly uncontradicted that the "vacant property" referred to is unavailable for large manufacturing plants, solely because it is not provided with railroad facilities. It cannot be the policy of the law that various railroad companies should be made secure in the monopoly of the freight business of the great port of the city of Buffalo, and also made secure in the control of all the available manufacturing sites in said city. It appears without contradiction that both north and south of the city of Buffalo, and on the line of the proposed railroad, there is ample water frontage, and adjacent thereto extensive tracts of land upon which any large manufacturing plant could be located, and would be located provided only transportation facilities were afforded.

Justice SPRING further says:

"Suffice it to say, there was abundant evidence, as conditions then prevailed (when the hearing before the Railroad Commissioners was had), to warrant the decision that a terminal road was essential."

As before suggested, the conditions then existing have not changed in any essential particular and so as to justify a different conclusion by this court. A large territory both north and south of the city of Buffalo, accessible to the water front and admirably adapted to manufacturing and all the purposes of commerce, is practically unoccupied and undeveloped because without railroad facilities, and such territory is thus undeveloped and unused notwithstanding practically all suitable sites for large manufactories and which have railroad facilities are owned and occupied by the respective railroad companies now operating in the city of Buffalo. The petitioner proposes to supply ample railroad accommodations to such territory, and in such manner that connection may be made which will permit of the interchange of freight with every other railroad entering said city. This great development should not be checked. Permission to carry out this improvement, which is asked for not only by the petitioner, but by a large body of the representative citizens of the city, ought not be blocked upon the objection of the existing railroad companies, because they, in the future, may be able to furnish facilities to properly take care of the freight which may come to the territory occupied by them, and because, if such facilities are provided and any of such freight is permitted to be diverted, a loss in revenue will result to them.

The objection made by the Buffalo, Lake Erie & Niagara Railroad Company to the granting of the application herein ought not to affect the rights of the petitioner in any particular, or to influence our decision in the case.

It appears that about the year 1903 a company known as the "Niagara Transfer Company" presented its petition to the Board of Railroad Commissioners asking for a certificate of public convenience and necessity, under section 59 of the railroad law, for the construction of a railroad extending from the outskirts of the city of Buffalo to the village of Tonawanda, a distance of 17 miles. The route of such proposed railroad passed through the same territory, and its route,

except along the Niagara river front, is substantially the same as the route of the railroad proposed to be constructed by the petitioner herein. The certificate asked for was granted to said company by the Board of Railroad Commissioners, but on the hearing of a writ of certiorari to review the action of the Board of Railroad Commissioners in granting that certificate their determination was reversed by the Appellate Division, Third Department, 103 App. Div. 123, 93 N. Y. Supp. 58, and that decision was affirmed by the Court of Appeals in 184 N. Y. 575, 77 N. E. 1194, in June, 1905. The opinion in the Appellate Division was written by Justice Houghton, and the ground of the decision appears by the headnote as follows:

"It appears that it (the proposed railroad) was designed as a freight switch road, and that its primary purpose was the development for manufacturing and shipping purposes of a tract of land of about 2,200 acres, which had a frontage on the Niagara river of about four miles. The owners of more than 62 per cent. of this tract, representing 66 per cent. of its entire water frontage, objected to the granting of the certificate.

"The evidence established that the proposed road would serve no public necessity, except such as might result from future construction of manufacturing plants upon the tract in question, and also that the cutting off of their water frontage by the proposed railroad would result in very great damage to the owners of such tract, exceedingly difficult, if not impossible, of ascertainment in condemnation proceedings.

"Held, that the evidence did not justify the granting of the certificate of public convenience and necessity."

In the case at bar no such situation is presented, and no such objection was made by the owners of property along its proposed route.

While the proceedings for review in that case were pending, the present respondent the Buffalo, Lake Erie & Niagara Railroad Company was incorporated in the interests of the same men who were concerned in the Niagara Transfer Company, and for the purpose of promoting practically the same object. The new company so organized made its application in 1905 to the Board of Railroad Commissioners for a certificate under section 59 of the railroad law; but in addition to two of the proposed lines of railway mentioned in the former application, one along the Niagara river front between Buffalo and Tonawanda, and one on the bluff along the canal between those places, a short distance back from the river front, this application covered a proposed terminal railway running around northerly, easterly, and southerly of the city of Buffalo, and ending at a point on Lake Erie southerly of such city. The Board of Railroad Commissioners granted to such new railroad company, this respondent, the certificate which it asked for. Upon a review of the determination of the Board of Railroad Commissioners by the Appellate Division of the Third Department, it was vacated and set aside (People ex rel. Sawyer v. Board of R. R. Com'rs of New York, 128 App. Div. 814, 114 N. Y. Supp. 122), and upon the ground that the situation presented upon the second application was practically the same as upon the first; and, further, it was held that a certificate of public convenience and necessity should not be granted where the construction of the railroad will involve the monopolizing of lands fronting on navigable waters to the great detriment of commercial interests and

to a proposed ship canal to be built by the federal government. After that decision was made by the Appellate Division, the respondent the Buffalo, Lake Erie & Niagara Railroad Company made application to the Public Service Commission, Second department, for a certificate of public convenience and necessity, and such application is now pending before such commission, and it is urged that the pendency of that application is a reason why this court should not determine the petitioner's rights in the premises, but should send it to the Public Service Commission, because the application of the Buffalo, Lake Erie & Niagara Railroad Company is pending and undetermined before such commission. It seems to me that the petitioner by the long, laborious, and exhaustive trial which it prosecuted before the Board of Railroad Commissioners, making a record of more than 2,000 pages, acquired the right to have the determination made upon that application reviewed in the manner provided by law, and that such right cannot be affected because some other corporation has made a similar application to the commission, which is the successor of the Board of Railroad Commissioners, and which is charged with all the duties imposed upon the Board of Railroad Commissioners, and is charged with the duty also of giving force and effect to any determination of courts respecting the rights of any party who submitted his rights in the manner prescribed by law to the Board of Railroad Commissioners.

Practically the argument on behalf of the Buffalo, Lake Erie & Niagara Railroad Company in opposition to the petitioner's application is that, while the route of the petitioner's proposed railroad is practically the same as that proposed by it, it is not as good or suitable and would not accommodate the general public as well. We have seen why the certificate granted to it was reversed in both instances. It was because they were to greatly damage a large tract of land adjacent to Niagara river, because a large percentage of the owners of the land which it was their purpose to develop were protesting against the construction of the road, and in the last case because the construction of such road "would involve the monopolizing of lands fronting on navigable waters, to the great detriment of commercial interests and to a proposed ship canal to be built by the federal government." As we have seen, no such situation is presented in the case at bar, and no objection to the construction of petitioner's railroad is made upon any such ground.

It seems to me beyond doubt that this court has ample authority to grant the application which is asked for, and that such decision in no manner usurps the important functions and duties of the Public Service Commission. If an order is made directing the issuance of a certificate by such commission, the act is purely ministerial, and the decision is based upon the record made before the Board of Railroad Commissioners before the Public Service Commission was created, and for which record it has no responsibility. The Public Service Commission law (Laws 1907, p. 920, c. 429) went into effect July 1, 1907, four days after the certificate of the Board of Railroad Commissioners certified the papers and proceedings in this case. The Board of Railroad Commissioners was abolished by the Public Service

Commission law, and it is therein provided that all the powers and duties of such board "conferred and imposed by any statute of this state shall thereupon be exercised and performed by the Public Service Commissioners." Under the old law, if the Board of Railroad Commissioners had improperly refused to grant a certificate of public convenience and necessity, it was the duty of the Appellate Court to review such determination, and correct the error by directing that such board issue such certificate. The only body which is now capable of making the certificate under such circumstances is the Public Service Commission, and it seems idle to suggest that under the provisions of the law a litigant before the Railroad Commissioners, who incurred the expense of trying his case and making his record, should be powerless to have such determination by the Appellate Court upon the record so made.

It is further provided in the act creating the Public Service Commission (section 85):

"This act shall not affect pending actions or proceedings, civil or criminal, brought by or against the Board of Railroad Commissioners or the Commission of Gas and Electricity, or the Board of Rapid Transit Railroad Commissioners, but the same may be prosecuted or defended in the name of the Public Service Commission, provided the subject-matter thereof is within the statutory jurisdiction of such commission. Any investigation, examination, or proceeding undertaken, commenced or instituted by the said boards or commissions, or either of them, prior to the taking effect of this act may be conducted and continued to a final determination by the proper Public Service Commission in the same manner, under the same terms and conditions, and with the same effect as though such boards or commissions had not been abolished."

And by section 86:

"Whenever the terms 'Board of Railroad Commissioners' * * * occur in any law * * * or whenever in any law * * * reference is made to such boards * * * such terms or reference shall be deemed to refer to and include the Public Service Commissions as established by this act, so far as such law * * * pertains to matters which are within the jurisdiction of the said Public Service Commissions."

By section 31 of the statutory construction law (Laws 1892, p. 1491, c. 677) it is provided:

"The repeal of a statute or part thereof shall not affect or impair any act done or right accruing, accrued or acquired, or liability, penalty, forfeiture or punishment incurred prior to the time such appeal takes effect, but the same may be asserted, enforced, prosecuted or inflicted, as fully and to the same extent as if such repeal had not been effected; and all actions and proceedings, civil or criminal, commenced under or by virtue of any provision of a statute so repealed, and pending immediately prior to the taking effect of such repeal, may be prosecuted and defended to final effect in the same manner as they might if such provisions were not so repealed."

The cases cited by respondent's counsel, People ex rel. N. Y. C. & H. R. R. Co., 156 N. Y. 570, 51 N. E. 312, Village of Champlain v. McCrea, 165 N. Y. 264, 59 N. W. 83, Stone v. Board of Supervisors, 166 N. Y. 85, 59 N. E. 708, and others to the same effect, sustain the proposition that this court has the power to direct the Public Service Commission to issue the certificate which the Board of Railroad Commissioners ought to have issued in this case, and that

this court should so decide, there being practically no essential difference in the situation which existed at the time that the Board of Railroad Commissioners refused to issue the certificate of public convenience and necessity than the situation which existed at the time of the submission of this case to this court.

As we have seen, it is practically undisputed that the railroad proposed to be constructed by the petitioner, if constructed, will bring into the market a vast territory north and south of the city of Buffalo, will make it suitable and available for manufacturing purposes and other industrial enterprises, and that it cannot be made available unless railroad accommodations are afforded. It is equally conclusively established that the only basis of the opposition to this application is that the railroad corporations entering the city of Buffalo desire that all freight entering or leaving such city shall be compelled to employ one or the other of them in its distribution, and that, if any of such freight is diverted, it will cause a decrease in the revenues of such corporations. It is not suggested that they intend to furnish railroad facilities to the territory which is traversed by the proposed railroad of the petitioner.

This is an important case. Important interests are involved. I would be glad for one if I could agree with Brother SPRING in concluding that in the performance of our duty we should avoid deciding the question which is presented here and impose the responsibility upon the Public Service Commission. But such action imposes the burden upon the petitioner of retrying the case and of making another record of 2,000 pages or more. Under all the circumstances, I think it is our duty to decide whether or not upon the evidence presented to us, and taking into consideration the affidavit presented, showing the situation as it has been changed or as it now exists, a certificate of public convenience and necessity should issue to the petitioner.

I think that this court should direct that the Public Service Commission issue such certificate as prayed for by the petitioner.

Determination of the Board of Railroad Commissioners set aside, and a rehearing ordered before the Public Service Commission, Second district, without costs in this court to either party. All concur except McLENNAN, P. J., who dissents in an opinion, and votes for granting the application.