VILLAGE OF FORT EDWARD, Respondent, *v.* HUDSON VALLEY RAILWAY COMPANY et al., Appellants.

1. RAILROADS — VILLAGES — CROSSING OF STEAM RAILROAD AND ELECTRIC STREET RAILWAY UPON PUBLIC STREET OF INCORPORATED VILLAGE — CONSENT OF VILLAGE TRUSTEES. The trustees of an incorporated village, who granted to an electric street railway company a franchise giving it the right to lay its tracks through a public street of the village and across the tracks of a steam railroad company, must have understood

that, under the provisions of the Railroad Law (L. 1890, ch. 565, § 12, as amd. by L. 1892, ch. 676), it would become the duty of the two railroads to intersect their tracks so that cars could be exchanged from one road to the other and their grant, or franchise, must, therefore, be deemed to have included the right of the railroad companies to so intersect their tracks. But the trustees did not by this grant abdicate their powers under the charter of the village, which devolved upon them the care, management and control of the streets of the village and made it their duty to guard and preserve the streets from unnecessary encroachments or dangers to which the traveling public may be subjected. While the railroad companies have the right to intersect their tracks for the purpose of exchanging cars from one road to the other, yet the village trustees have the right to be heard and to participate in any agreement that shall be made with reference to the place and manner of the intersecting of the tracks of the two railroad companies, and to participate in the determination of the place and manner of making such determination.

2. Same — Intersection of Tracks of Steam Railroad and Electric Street Railway — Statutes Relating Thereto (Railroad Law, L. 1890, Ch. 565, §§ 11 and 12) — Construction and Application Thereof — Supreme Court Has Power to Appoint Commission to Determine Point and Manner of Intersection. Under section 11 of the Railroad Law, no railroad corporation can construct its road across, upon or along any highway in any town or street in an incorporated village without an order of the Supreme Court of the district in which such highway or street is situated, so that in the towns and incorporated villages of the state express power is given to the Supreme Court to determine whether a construction upon the highways or streets shall be permitted. Under section 12, which regulates the crossing and intersection of steam railroads, the Supreme Court is empowered, in case of disagreement between the railroad companies, to appoint three commissioners, one of whom shall be an engineer and surveyor, to determine the points or manner of intersection of the tracks of the companies, and the companies, whose tracks are so joined and intersected, are required to receive from each other and transport to its destination 'all freight intended for points on their respective roads. These sections, read together, designate the practice in the case of the intersection of an electric street railway and a steam railroad upon a public street of an incorporated village. If the three corporations interested, the two railroad corporations and the municipal corporation, as represented by its trustees, are unable to agree as to the points and manner of intersecting of the tracks of the two companies in the public street of the village, the duty devolves upon the Supreme Court to determine the same, and that may be done by appointing commissioners, one of whom shall be a civil engineer and surveyor, to determine the point, or place, and manner of the intersection.

3. Same — Certificate of Public Service Commission Not Required. The provision of the Public Service Commissions Law (L.

1907, ch. 429, § 53), prescribing that no steam, street or other railroad corporation shall " exercise any franchise or right under any provision of the Railroad Law or of any other law, not heretofore lawfully exercised without first having obtained the permission and approval of the * * * commission," which cannot be granted unless the commission, after due hearing, determines that it will be necessary or convenient for the public service, has no application to the statute (Railroad Law, L. 1890, ch. 565, § 12, as amd. by L. 1892, ch. 676), making it the duty of railroad companies, whose tracks cross each other, to intersect their tracks for the benefit of the public, since the legislature, by the express enactment of said section 12 of the Railroad Law, has itself determined the question of convenience and necessity in such cases, and there is no provision in the Public Service Commissions Law indicating any legislative intent to repeal this provision of the Railroad Law or invest the commission with power to supersede it. The public service commission is not required, therefore, to give a certificate of convenience and necessity under section 53 in this case, and there is nothing in the provisions of the section that requires the commission to determine the point or manner in which the intersection of the tracks of a steam railroad and an electric street railway, which cross each other upon a public street of an incorporated village, shall be made.

*Vil. of Fort Edward* v. *H. V. Ry. Co.,* 122 App. Div. 903, affirmed.

(Argued March 30, 1908; decided May 19, 1908.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the third judicial department, entered November 18, 1907, which affirmed an order of Special Term continuing an injunction *pendente lite.*

. The nature of the action and the facts, so far as material, are stated in the opinion.

*Lewis E. Carr* and *W. L. Kiley* for appellants. The order appealed from is erroneous, because it attaches to the statute relating to .connecting roads a limitation or condition not found in the statute itself, or in the occasion for its adoption. Municipal authorities cannot, by their action, prevent the construction of a track to connect two roads that cross or intersect each other. If they cannot prevent such a connection, their assent to it is not required to permit the connection to be made. (L. 1890, ch. 565, § 12; *H. V. R. Co.* v. *B. & M. R. R. Co.,* 106 App. Div. 375 ; *Matter of S. & M. St. Ry.*

*Co.*, 171 N. Y. 589; *B., etc., R. R. Co.* v. *N. Y., L. E. & W. R. R. Co.*, 72 Hun, 583; *De Grauw* v. *L. I. E. Co.*, 43 App. Div. 502; *People ex rel.* v. *Hoyt*, 66 N. Y. 606; *People* v. *N. Y. C. R. R. Co.*, 74 N. Y. 302.) It was not necessary for the defendant companies to obtain the consent of the public service commission, under section 53 of the Public Service Commissions Law, to put in the connecting track they were restrained from constructing. (L. 1907, ch. 429, § 53; *Donaldson* v. *Wood*, 22 Wend. 395; *Pillon* v. *Bushnell*, 5 Barb. 156; *White* v. *Wager*, 22 Barb. 250; *People ex rel. Collins* v. *Spicer*, 99 N. Y. 225; *King* v. *B. H. R. R. Co.*, 25 Misc. Rep. 334; *People* v. *F. & C. I. R. R. Co.*, 89 N. Y. 75.)

*Edgar T. Brackett* and *Wyman S. Bascom* for respondent. The defendants have no right to make the connection without the consent of the public service commission. (L. 1907, ch. 429, § 53.) The appellants have no right to use any part of the street of the village of Fort Edward, or of its public places, to form the connection in question, without having first obtained the consent of the municipal authorities. (L. 1897, ch. 414, § 141; *Vil. of Hartford* v. *B. E. Co.*, 41 N. Y. Supp. 124.)

Haight, J. This action was brought to restrain the defendants from constructing a switch on Broadway in the village of Fort Edward, by which the defendants intended to intersect their railroad tracks.

The Delaware and Hudson Company is engaged in operating a double-track steam railroad through the village of Fort Edward, crossing Broadway, one of the streets of the village, at grade, substantially at right angles. The Hudson Valley Railway Company owns and operates an electric street railroad located in Broadway, through the village, upon a franchise granted September 15, 1900, by the municipal authorities, under which the company is permitted to run, maintain and operate its railroad with the necessary sidings, switches and

turnouts through Broadway, for the public use in the conveyance of persons and property in cars for compensation, by the power of electricity, and its tracks cross those of the Delaware and Hudson Company in Broadway at grade. Certain conditions were imposed by the terms of the franchise with reference to the erection of poles, the locating of tracks and the maintenance of the street, which are not now necessary to be considered.

It is alleged in the complaint that the Delaware and Hudson Company and the Hudson Valley Railway Company are now engaged in building an extension of their said railroads, extending from the tracks of the Hudson Valley Railway Company, diagonally across Broadway, to the lands of the Delaware and Hudson Company intersecting and connecting the tracks of the two companies, without the consent of the trustees of the village and without the consent of the public service commission.

The first question certified for our determination is as follows: "Was it necessary for the defendants to procure the assent of the trustees of the village to the construction of their proposed track in Broadway?"

Under section 12 of the Railroad Law it is provided that "every railroad corporation whose road is or shall be intersected by any new railroad, shall unite with the corporation owning such new railroad in forming the necessary intersections and connections, and grant the requisite facilities therefor." In *Matter of Stillwater* v. *M. St. Ry. Co.* (171 N. Y. 589) we held that this provision of the statute was intended to promote the public interests, independent of the railroad companies; that the shippers of merchandise and freight have the right to make use of all the facilities required of common carriers by the provisions of the Railroad Law, and that where one railroad crossed the tracks of another the provision requiring them to intersect their tracks was to enable shippers of freight to avail themselves of the facilities required of each railroad so intersecting the other. The intersecting, therefore, of the tracks of crossing railroads is, in

its nature, a public duty which may be enforced on behalf of the public by the attorney-general if not by individual shippers of freight, a question which it is not now necessary to determine. When, therefore, the trustees of the village of Fort Edward granted to the Hudson Valley Railway Company a franchise giving it the right to lay its tracks through Broadway and across the tracks of the Delaware and Hudson Company they understood that, under the provisions of the Railroad Law, to which attention has been called, it would become the duty of the two railroads to intersect their tracks so that cars could be exchanged from one road to the other and their grant or franchise must, therefore, be deemed to have included the right of the railroad companies to so intersect their tracks. But we are of the opinion that this was the extent of the grant made by the trustees of the village. They did not by this grant abdicate their powers under the charter of the village, which devolved upon them the care, management and control of the streets of the village and made it their duty to guard and preserve the streets from unnecessary encroachments or dangers to which the traveling public may be subjected. The trustees, therefore, have a right to be heard and to participate in any agreement that shall be made with reference to the place and manner of the intersecting of the tracks of the two railroad companies. This must be so; otherwise the companies could agree between themselves to run a side track up Broadway to the center of the block or even to the end of the block or into the next block before intersecting their tracks and thus seriously impair the usefulness of the street for teams and vehicles. Our conclusion, therefore, is that while the railroad companies have the right to intersect their tracks for the purpose of exchanging cars from one road to the other, yet the village trustees have the right to participate in the determination of the place and manner of making such intersection.

We are thus brought to a consideration of the question as to the practice that should be adopted in determining the place and manner that the intersection should be made. Sec-

tion 12 of the Railroad Law was originally adopted before the
advent of electric street railways.    In framing its provisions
the legislature, doubtless, had in mind the crossing of steam
railroads, which were generally made upon their own rights
of way outside of the public streets and hence it was pro-
vided that in case they should be unable to agree upon the
points or manner of such intersection the same shall be ascer-
tained and determined by commissioners, one of whom must
be a practical civil engineer and surveyor, to be appointed by
the court as provided in the Condemnation Law.    But since
the advent of our modern electric street railroads, it often
occurs that the crossing of the two railroads is in the public
highway within the limits of a city or village, and whenever
an intersection is sought at such a crossing it necessarily cre-
ates another party in interest, charged with the duty of the
care and management of the highway affected, who must be
considered in determining the point and manner in which the
tracks of the two railroads shall be intersected.

Section 11 of the Railroad Law, among other things, pro-
vides that no railroad corporation shall construct its road in,
upon or across any street of any city without the consent of
the corporation of such city, nor across, upon or along any
highway in any town or street in an incorporated village
without an order of the Supreme Court of the district in
which such highway or street is situated.    We thus have in
the towns and incorporated villages of the state express
power given to the Supreme Court to determine whether a
construction upon the highways or streets shall be permitted.
Reading this section in connection with section 12 of the same
law, we find the Supreme Court empowered to appoint com-
missioners to determine the points and manner of intersection
of the tracks of the two railroad companies, followed by the
provision that "all railroad corporations whose roads are or
shall hereafter be so crossed, intersected or joined, shall
receive from each other and forward to their destination all
goods, merchandise and other property intended for points on
their respective roads    *    *    *    for individuals and other
                    10

corporations." It thus appears to us that the practice is that which is designated by the statute.. If the corporations in this case, the two railroad corporations and the municipal corporation, as represented by its trustees, are unable to agree as to the points and manner of intersecting of the tracks of the two companies in the public street of the village, the duty devolves upon the Supreme Court to determine the same and that may be done by appointing commissioners, one of whom shall be a civil engineer and surveyor, to determine the point, or place, and manner of the intersection.

The contention is now made that all the provisions of the statute to which we have alluded have been either repealed or superseded by the Public Service Commissions Law and we, consequently, have certified for our determination a second question as follows:

" Was it necessary for the defendant to procure the consent of the Public Service Commission under section 53 of the Public Service Commissions Law before making the connection proposed ? "

Under subdivision two of section 190 of the Code of Civil Procedure appeals may be taken in the cases specified in the provision when the court certifies " that one or more questions of law have arisen which, in its opinion, ought to be reviewed by the Court of Appeals, in which case the appeal brings up for review the question or questions so certified, *and no other.*" We are thus limited by the questions certified to the consideration of section 53 and are called upon to determine whether the consent of the public service commission is necessary under that section before the companies can make the connection proposed. The provisions of the section, so far as they are here involved, are as follows: " Without first having obtained the permission and approval of the proper commission no railroad corporation, street railroad corporation or common carrier shall begin the construction of a railroad or street railroad, or any extension thereof, for which prior to the time when this act becomes a law a certificate of public convenience and necessity shall not have been granted

by the board of railroad commissioners or where prior to said time said corporation or common carrier shall not have become entitled by virtue of its compliance with the provisions of the railroad law to begin such construction; nor, except as above provided in this section, shall any such corporation or common carrier exercise any franchise or right under any provision of the railroad law, or of any other law, not heretofore lawfully exercised, without first having obtained the permission and approval of the proper commission. The commission within whose district such construction is to be made, or within whose district such franchise or right is to be exercised, shall have power to grant the permission and approval herein specified whenever it shall after due hearing determine that such construction or such exercise of the franchise or privilege is *necessary or convenient for the public service.*" (L. 1907, ch. 429.)

It will be observed that the first provision prohibits all railroad corporations from beginning the construction of a railroad or of any extension thereof without first procuring from the commission a certificate of public convenience and necessity. Then follows a provision which preserves the certificate of public convenience and necessity granted by the railroad commissioners under a former statute which this act superseded; and the next provision preserves the rights of a corporation, which, by virtue of its compliance with the provisions of the Railroad Law at the time the act took effect, was entitled to begin such construction. Then follows the provision about which the parties differ: "Nor, except as above provided in this section, shall any such corporation or common carrier exercise any franchise or right under any provision of the Railroad Law or of any other law not heretofore lawfully exercised without first having obtained the permission and approval of the proper commission." It must be conceded that the wording of this provision is exceedingly broad and a determination of the legislative intent as to its scope and meaning may be involved in some uncertainty. It is a matter of common knowledge that many franchises have

been granted by the legislature and municipal governments that have lain dormant and unused for many years, without any attempt upon the part of those to whom the franchises were made to exercise the powers granted. It is also common knowledge that in recent years many of these old grants have been acquired by others and attempts made to restore them to life and exercise their powers. It is quite possible that by this clause the legislature intended to bring in these franchises and rights, placing them upon the same footing as that of the franchises and rights granted to railroad companies by requiring first a certificate of public convenience and necessity. But however this may be, it is quite apparent that the certificate of convenience and necessity provided for in this section of the statute has no application to the act under consideration; for we have the express enactment of the legislature making it the duty of the railroad companies to intersect their tracks for the benefit of the public, and the determination of this court in *Matter of Stillwater & M. St. Ry. Co. Case* (*supra*) in which the railroad companies were compelled to perform such duty. It would seem, therefore, that the legislature by section 12 of the Railroad Law had itself determined the question of convenience and necessity in such cases, and we have been unable to find any expression in the Public Service Law indicating a legislative intent to repeal this provision of the Railroad Law or to invest the commissioners with the power to supersede it. It will be observed that every clause of section 53 of the statute under review pertains to the procuring of a certificate of public convenience and necessity, and this is as true with reference to the clause under consideration as it is with reference to those which preceded it; for permission to exercise the franchise or rights therein mentioned is only to be granted by the commission after a hearing had and a determination made that such exercise of the franchise or privilege " is *necessary or convenient* for the public service." It will further be observed that not a word is to be found in the provision of this section authorizing the commission to determine the point and manner in which the tracks of rail-

road companies shall be intersected.   It may be that the commission could better determine the point and manner of the intersection of the tracks than the commission authorized to be appointed by the Supreme Court under the provisions of the Railroad Law.   It may be that disputes of this character could better be determined by the public service commission than they could be by the Supreme Court; but where is the statute to be found authorizing the commission to determine these questions?   We are unable to find any such authority in section 53, nor any clause therein that is repugnant to the provisions of the Railroad Law in this regard or that indicates an intention to repeal or supersede the provisions alluded to. We, consequently, conclude that the public service commission is not required to give a certificate of convenience and necessity under section 53 in this case, and that there is nothing in the provisions of the section that requires the commission to determine the point or manner in which the intersection of the defendants' tracks should be made.

The order appealed from should be affirmed, with costs, and the first question certified answered in the affirmative, so far as it pertains to the point and manner of the intersection of the tracks in Broadway, and the second question certified answered in the negative.

Vann, J.   Section 12 of the Railroad Law grants a franchise to railroad corporations situated as the defendants are, with reference to the intersection of their tracks.   (L. 1892, ch. 676; *Trustees of Southampton* v. *Jessup*, 162 N. Y. 122, 126; *Matter of Stillwater & Mechanicville St. Ry. Co.*, 171 N. Y. 589.)

Section 53 of the Public Service Commissions Law prohibits the exercise of that franchise without the permission and approval of the proper commission.   (L. 1907, ch. 429, § 53.) The intention to subject section 12 of the earlier act to the control of section 53 of the later act is emphasized by the explicit command of the legislature that " a railroad corporation and a street railroad corporation shall not be required to

interchange cars except on such terms and conditions as *the commission* may direct." (Pub. Ser. Com. Law, § 35.) The phrase "not heretofore lawfully exercised," as used in section 53, does not limit the power of the commission in this case, because the franchise or right to intersect their tracks at the point in question had not been exercised by the appellants when the present controversy arose.

Section 11 of the Railroad Law does not impress me as applicable to the case in hand. The question of convenience is not before us. The public service commission was not created for the convenience of corporations but for the protection of the public.

I think the order appealed from should be affirmed; that the first question certified should be answered in the negative and the second in the affirmative.

GRAY, WERNER, HISCOCK and CHASE, JJ., concur with HAIGHT, J.; CULLEN, Ch. J., concurs with VANN, J.

Order affirmed.