PEOPLE ex rel. NEW YORK, N. H. & H. R. CO. v. WILLCOX et al.. Public Service Com'rs.

(Supreme Court, Appellate Division, First Department. May 20, 1910.)

1. RAILROADS (§ 223*)—REGULATIONS—POWER OF PUBLIC SERVICE COMMISSION.

The State Public Service Commission has power to prohibit a railroad company from loading more than four cars of manure at one time at a place where it loaded manure for shipment, in order to lessen the noxious odors given off therefrom.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 725; Dec. Dig. § 223.*]

2. RAILROADS (§ 9*)—REGULATION—PUBLIC SERVICE COMMISSION—REVIEW OF ORDERS.

Since the State Public Service Commission has power to prohibit a railroad from loading more than four cars of manure at one time at a place where it loaded it for shipment, the appellate division cannot say that its order is unreasonable, in the absence of a fair trial thereon.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 19; Dec. Dig. § 9.*]

3. RAILROADS (§ 223*)—REGULATION—REGULATION BY PUBLIC SERVICE COMMISSION—JURISDICTION.

Public Service Commission Law (Laws 1907, c. 429) § 5, extends the jurisdiction of the commission to any railroad within the district so far as concerns local transportation. Section 49 requires the commis-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

sion to determine the reasonable and proper equipment of railroads. By section 50, if, in the commissioners' judgment, repairs or improvements in terminal facilities or devices ought reasonably to be made, or any additions should be made thereto to promote the security or convenience of the public or employés, or to secure adequate service or facilities, it shall order such repairs, changes, etc. *Held*, that the commission had jurisdiction to compel a railroad company to remove a wooden platform, where it loaded manure, and provide a properly drained platform, and to load no car within a certain distance of an elevated railroad and take precautions to prevent the escape of noxious odors in loading, such as to cover cars as soon as loaded, remove loaded cars at the end of each day, etc., such regulations being reasonable, and that the loading of the manure as it was done was a nuisance which the city health department could abate, did not deprive the commission of such jurisdiction.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 725; Dec. Dig. § 223.*]

**4. RAILROADS (§ 223*)—REGULATION—REGULATION BY PUBLIC SERVICE COMMISSION.**

The commission could order such changes to be made upon the complaint of property owners to protect the general public interest; its power to act not being confined to the promotion of the security or convenience of the railroad company's employés or of shippers.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 725; Dec. Dig. § 223.*]

Scott, J., dissenting.

Certiorari by the People, on the relation of the New York, New Haven & Hartford Railroad Company, against William R. Willcox and others, as Commissioners, constituting the Public Service Commission of the City of New York, First District, to review orders made by respondents relating to the loading of freight. Writ dismissed, and orders affirmed.

Argued before INGRAHAM, P. J., and CLARKE, McLAUGHLIN, SCOTT, and DOWLING, JJ.

Charles M. Sheafe, Jr., for relator.
George S. Coleman, for respondents.
Theodore Connoly, for Health Department of City of New York.

McLAUGHLIN, J. The relator is a railroad corporation and maintains a yard along the Harlem river in the neighborhood of 132d street in the city of New York for the receipt and shipment of freight. For some time it has been accustomed to receive at this yard manure collected from numerous stables in the vicinity, for shipment to various points in New England. That part of the yard where the manure has been loaded upon the cars preparatory for shipment is between the Third Avenue Elevated Railroad bridge over the Harlem river and the Willis Avenue Bridge. It appears that the loading of the manure at this point causes odors, especially in warm and damp weather, highly offensive to travelers upon the bridges mentioned and to the residents of the neighborhood. An association of property owners complained to the respondents, the Public Service Commission, and asked that it either direct the relator to cease loading manure

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

in the yard altogether, or else prescribe the methods to be used in loading so as to render the conditions less objectionable. The relator was notified of the complaint and a hearing had, upon which it appeared that open flat cars were used to transport the manure, which were frequently left standing in the yard after having been loaded; that the loading was done from a wooden platform between the tracks, not roofed over, and with no drainage facilities; that the planking had become thoroughly saturated and foul, and it could not be kept clean. The commission thereupon issued an order directing the relator to remove the wooden platform; disinfect the ground; construct a new paved platform with a proper sewer-connected drain; and, between May 1st and November 1st of each year, to use the tracks occupied by manure cars for no other purpose whatever while being used for manure shipment; to load no cars within 100 feet of the elevated railroad and not more than 4 cars at one time; to cover all cars as soon as loaded with tarpaulins or canvas so as to prevent as far as possible the escape of objectionable odors; to haul away loaded cars for shipment at the close of each day's work and remove partly loaded cars to some remote portion of the yard for the night; to keep the platform clean at all times, and, after the removal of the cars after each day's work, to sweep it and then wash it down thoroughly with water. A rehearing was thereafter had, at the instance of the relator, and another order issued refusing to modify the original one, and confirming it. The relator now seeks, by writ of certiorari, a review of these orders, to the end that this court may reverse or at least modify them.

The evidence presented to the commission fully warranted the order which it made. Indeed, the necessity of doing away with the decayed wooden platform and substituting a more sanitary arrangement for loading the manure seems practically to be conceded. Compliance with the order very likely will cause the relator some inconvenience and additional expense; but, in view of the evidence submitted, none of the conditions imposed would seem either impracticable or unreasonable. Certainly this court would not be justified in modifying the order until its operation has been tested by a fair trial.

It is urged that the provision in the order limiting the loading to not more than four cars at one time is not only unreasonable, but that the commission had no power to impose such condition. I think the commission had the power, in the first instance, to make it, and, in the absence of a fair trial, this court cannot say it is unreasonable. Willcox v. Consolidated Gas Co., 212 U. S. 19, 29 Sup. Ct. 192, 53 L. Ed. 382. If, after the relator has in good faith complied with all the terms of the order, it shall then appear that any of its provisions impose an unreasonable burden upon the relator, it can apply to the commission for relief from such of its conditions as are unduly oppressive, and, if such relief be not given, then the action of the board may be reviewed in the manner here sought.

It is also suggested that the commission did not have jurisdiction to make the order. This presents a more serious question; but a consideration of the sections of the Public Service Commission law (Laws

of 1907, c. 429) leaves little doubt upon this subject. Section 5 of the act provides that the jurisdiction of the commission shall extend to the lines of any railroad within the district "so far as concerns the construction, maintenance, equipment, terminal facilities and local transportation facilities, and local transportation of persons or property within that district." Section 49 provides:

"Whenever the commission shall be of opinion * * * that the regulations, practices, equipment, appliances, or service of any such * * * railroad corporation * * * in respect to transportation of persons, freight or property within the state are unjust, unreasonable, unsafe, improper or inadequate, the commission shall determine the just, reasonable, safe, adequate and proper regulations, practices, equipment, appliances and service * * * and prescribe the same by order."

Section 50 further provides that:

"If, in the judgment of the commission having jurisdiction, repairs or improvements to or changes in any tracks, switches, terminals or terminal facilities, motive power, or any other property or device used by any * * * railroad corporation * * * in or in connection with the transportation of passengers, freight or property ought reasonably to be made, or that any additions should reasonably be made thereto, in order to promote the security or convenience of the public or employés, or in order to secure adequate service or facilities, * * * the commission shall * * * make and serve an order directing such repairs, improvements, changes or additions to be made. * * *"

The power given by these sections to the commission authorized it, upon the facts presented, to make the order which it did. This order simply requires the relator to provide proper and reasonable terminal facilities, adequate and suitable equipment, and reasonable regulations for the transportation of this particular kind of freight in place of the inadequate and improper means theretofore used. The relator contends that such changes can be ordered only when necessary "to promote the security or convenience of" the employés of the railroad company, its patrons, or the shippers of the freight, and not, as here, in the interest of the general public. There is nothing in the statute to warrant such a narrow construction; on the contrary, both the literal meaning of the language used and the manifest intent of the Legislature are for the protection of the interest of the public at large. "We understand," says Judge Haight, in People ex rel. D. & H. Co. v. Stevens, 197 N. Y. 1, 90 N. E. 60, in which the other members of the court concurred, "that the paramount purpose of the enactment of the Public Service Commission law was the protection and enforcement of the rights of the public."

I am unable to see any basis for the relator's claim that the commission can direct changes in the operation of a railroad only in the interest of its employés or patrons. There are other interests which it has a right, and it is its duty, to consider, and that is the interest of the general public.

It appears, however, that, prior to the investigation instituted by the commission, the health department of the city of New York had taken action in the matter and directed the relator to install a paved platform similar to the one specified in the order of the commission. It is strenuously urged both by the relator and by the corporation

counsel, representing the health department, who has by permission filed a brief, that the only ground of complaint is the existence of a nuisance, over which the health department has exclusive jurisdiction; that the Legislature never intended that the Public Service Commission should supersede the health department of the city or deprive it of jurisdiction in a case like the present one. That question is not necessarily involved in a determination of the question before us, and therefore it is unnecessary to pass upon it. It may be conceded that the conditions attending the shipment of manure in this yard had created a public nuisance, and that the health department has the same power to abate such nuisance, when maintained by a railroad corporation as when maintained by a private individual, but it does not follow, because the health department had the power to abate the nuisance, that the commission was without jurisdiction to regulate the shipment in the manner in which it did. If the jurisdiction of the commission should be limited to abuses which no other governmental agency or person has the power to correct, there would indeed be few cases in which it could act at all, and the obvious purpose of the statute would be practically nullified, if not destroyed. But in this connection it is sufficient to say that the statute conferred upon the commission the power to make the order which it did, and it is entirely immaterial whether a nuisance existed or not. The regulations prescribed for the shipment of manure were reasonable and proper, and the commission might properly have made the order if no nuisance had existed. It certainly cannot have lost jurisdiction because the relator had, for a long time prior to the order, used improper methods in the shipment of this particular kind of freight, so that a nuisance had resulted.

The writ should, therefore, be dismissed, and the orders affirmed, with $50 costs and disbursements to the respondents.

CLARKE and DOWLING, JJ., concur.

INGRAHAM, P. J.  I concur with Mr. Justice McLAUGHLIN, except that I do not wish that it should be understood that this decision at all affects the power of the board of health, or that the Public Service Commission was in any way, directly or indirectly, given power to adjudicate upon any question which solely related to the public health. It may be that in the exercise of the power over transportation given to the Public Service Commission its orders would relate to subjects over which the board of health has paramount jurisdiction; but as I view the statute it was nowhere intended to in any way infringe upon or affect the paramount jurisdiction of the health authorities to determine what was necessary for the preservation of the public health. So far as the regulation of transportation is concerned, the Public Service Commission has jurisdiction. Within that jurisdiction it has the right to prescribe such reasonable rules and regulations as may be necessary to properly control and manage the transportation of passengers and freight. On the other hand, the health authorities have power, and it is their duty, to so regulate transportation, as well as other subjects, when necessary, to protect the public

health. Compliance with the regulations of the Public Service Commission would not in any way relieve the health authorities of responsibility to protect the public health or relieve any person or corporation from being compelled to obey the reasonable rules and regulations of the board of health necessary for that purpose. It may be that regulations in relation to transportation made by the Public Service Commission would not be sufficient to protect the public health, in which case it would be the duty of the health department to prescribe such additional regulations as were necessary for that purpose. If this view is correct, there can be no possible conflict between the Public Service Commission and the health authorities, as the jurisdiction of each is directed towards an entirely different subject and to attain different objects.

With this expression of opinion I concur with Mr. Justice McLAUGHLIN.

SCOTT, J. I am unable to concur in the dismissal of the writ of certiorari. The order sought to be reviewed is frankly one to abate a nuisance, which in the opinion of the Public Service Commission is detrimental to the health of the community and interferes with the comfort of the public generally. This is a matter over which the Legislature has expressly given jurisdiction to the board of health, with the broadest possible powers to make and enforce the necessary measures for the public safety. Greater New York Charter, Laws 1901, c. 466, §§ 1167–1229. It is not questioned that, unless these powers have been repealed so far as concerns railroad properties, the board of health had ample power to abate the nuisance in question. In fact, it had taken the matter up and had made certain orders in regard thereto, before the order now sought to be reviewed had been made. If the Public Service Commission has authority over the same subject, merely because the relator maintained a nuisance (and no other ground for its order is suggested), it must be either because the Legislature has conferred upon the Public Service Commission concurrent jurisdiction with the board of health, to abate nuisances existing upon the property of railroad corporations, or because the Legislature has ousted the board of health of all jurisdiction to exercise its powers over property owned by such corporations, and conferred power in that regard solely upon the Public Service Commission. The respondents place themselves squarely upon the latter alternative. The commissioner, upon whose report the commission acted, and the respondents in their brief in this court, stand upon the broad proposition that the Legislature had delegated to the Public Service Commission all the police power of the state over the public agencies placed within the jurisdiction of that commission, and so far as concerned those agencies had recalled and abrogated the powers and authority of the health authorities. Although, for reasons to be presently stated, I totally disagree with this contention, I do agree that it is the only ground upon which the order under review can be logically sustained. It cannot be that the Legislature intended, by bare implication, to grant concurrent jurisdiction to two bodies over so important a matter as the protection of the public health. The obvious inconvenience which

might result therefrom, and the almost inevitable clashing of contradictory orders upon the same subject, would render the granting of such concurrent jurisdiction so unwise that we should not, in my opinion, attribute such an intention to the Legislature, unless it has been expressed in unmistakable terms.   The orderly and efficient administration of the law requires that there should be no conflict of authority such as is certain to result, sooner or later, from the possession by different governmental agencies of independent jurisdiction over the same subject-matter.  If then the respondents had jurisdiction to abate a nuisance merely because it was a nuisance, it must be that the board of health has been, by implication, ousted of such jurisdiction when the nuisance happens to be maintained by a railroad company upon its own property.

It must be conceded that such transference of authority has not been effected in plain terms, but·it is claimed to be found in the broad terms in which the Public Service Commissioners are given authority over railroads.   Section 5 of the Public Service Commission law (chapter 429, Laws 1907) provides as follows:

"The jurisdiction, supervision, powers and duties of the Public Service Commission in the first district shall extend under this act: (1) To railroads and street railroads lying exclusively within that district, and to the persons or corporations owning, leasing, operating or controlling the same. * * * (3) To such portion of the lines of any other railroad as lies within that district, and to the persons or corporations owning, leasing, operating or controlling the same, so far as concerns the construction, maintenance, equipment, terminal facilities and local transportation facilities, and local transportation of persons or property within that district."

Section 50 of the act provides as follows:

"If, in the judgment of the commission having jurisdiction, repairs or improvements to or changes in any tracks, switches, terminals or terminal facilities, motive power, or any other property or device used by any common carrier, railroad corporation or street railroad corporation in or in connection with the transportation of passengers, freight or property ought reasonably to be made, or that any additions should reasonably be made thereto, in order to promote the security or convenience of the public or employés, or in order to secure adequate service or facilities for the transportation of passengers, freight or property, the commission shall, after a hearing either on its own motion or after complaint, make and serve an order directing such repairs, improvements, changes or additions to be made within a reasonable time and in a manner to be specified therein, and every common carrier, railroad corporation and street railroad corporation is hereby required and directed to make all repairs, improvements, changes and additions required of it by any order of the commission served upon it."

There can be no doubt that the powers then vested in the Public Service Commission are very broad, but they are not without limits. Although the act has been in effect but a very few years, the courts have already, in several instances, been required to define some of those limits.   Village of Ft. Edward v. Hudson Valley R. R. Co., 192 N. Y. 139, 84 N. E. 962;  People ex rel. South Shore Traction Co. v. Willcox, 196 N. Y. 212, 89 N. E. 459;  People ex rel. D. & H. Co. v. Stevens, 197 N. Y. 1, 90 N. E. 60.

The authority conferred by the sections above quoted is fully and completely upheld if it be confined to matters affecting the construc-

tion, operation, assets, liabilities, passengers, freight, shippers, and other features attaching to railroad corporations in their capacity as common carriers, and it is quite unnecessary, in order to give full effect to the legislative grant of power, to so construe the statute as to confer upon the commission the power conferred by other statutes upon the health authorities, such as authority to abate a nuisance, even though the manner of the abatement may involve a reconstruction of some part of the railroad facilities.   Since, in the present case, the respondents and the board of health are in substantial accord as to what steps should be taken to abate this particular nuisance, it may not be of prime importance which body gives the order; but the principle involved is of great importance.   A time may come when the board of health may consider that to be detrimental to health, which the Public Service Commission considers harmless.   In such a case, if the present order be sustained, upon the only logical ground to be found for upholding it, an acute situation might arise.   I cannot believe that the Legislature intended to make such a situation possible.

In my opinion, therefore, the order in question was not within the power and jurisdiction of the commission, and should be annulled.