I am of the opinion that the public service commission had the power to make the order sought to be reviewed by the writ granted herein.
The title of the act establishing the public service commissions included a statement that it was "To provide for the regulation and control of certain public service corporations," and the commissions were by the act given very general powers relating to all matters affecting transportation, and such general powers are not limited because in their exercise they incidentally affect the subject of public health.
The boards of health in the municipalities of the state are given very general powers relating to all matters affecting the public health, and such powers are not limited because in their exercise they incidentally affect the subject of transportation.
It may be conceded that in all matters where the course to be pursued to preserve the public health is directed by the board of health of a municipality that its determination and *Page 435 
direction so far as it relates to a matter essential in the judgment of such board to the public health is controlling, and that the power of the board of health in such a case is superior and paramount to that of the public service commissions.
The general powers given to each board are directed to the accomplishment of entirely different objects, and the powers and authority of either cannot be questioned simply because in the exercise of such powers certain acts are required and certain results are accomplished which might have been required and accomplished through the other board.
It is necessary for the purpose of showing that the public service commission had the power to make the order now under consideration to quote from the Public Service Commissions Law (Consolidated Laws, chapter 48, Laws of 1910, chapter 480, Laws of 1907, first act chapter 429).
It is provided by section 2 of said law as follows:
"* * * *
"The term `railroad', when used in this act, includes every railroad, * * * operated for public use in the conveyance of persons or property for compensation, with all bridges * * * switches, spurs, tracks, stations and terminal facilities of every kind used, operated, controlled or owned by or in connection with any such railroad. * * *
"The term `transportation of property or freight,' when used in this act includes any service in connection with the receiving, delivery, elevation, transfer in transit, ventilation, refrigeration, icing, storage and handling of the property or freight transported."
It is provided by section 4 of said act "* * * Each commission shall possess the powers and duties hereinafter specified, and also all powers necessary or proper to enable it to carry out the purposes of this act."
It is provided by section 5 of said act: "The jurisdiction, supervision, powers and duties of the public service commission in the first district shall extend under this act,
"1. * * *
"2. * * * *Page 436 
"3. To such portion of the lines of any other (street railroads) railroad as lies within that district, and to the person or corporation owning, leasing, operating or controlling the same, so far as concerns the construction, maintenance, equipment, terminal facilities and local transportation facilities, and local transportation of persons or property within that district."
It is provided by section 45 of said act in subdivision 2 thereof as follows: "Each commission shall have the general supervision of all common carriers, railroads, street railroads, railroad corporations and street railroad corporations within its jurisdiction as hereinbefore defined, and shall have power to and shall examine the same and keep informed as to their general condition, their capitalization, their franchises and the manner in which their lines, owned, leased, controlled or operated, are managed, conducted and operated, not only with respect to the adequacy, security and accommodation afforded by their service, but also with respect to their compliance with all provisions of law, orders of the commission and charter requirements."
Section 49 of said act provides as follows: "And whenever the commission shall be of opinion, after a hearing, had upon its own motion or upon complaint, that the regulations, practices, equipment, appliances, or service of any such common carrier, railroad corporation or street railroad corporation in respect to transportation of persons, freight or property within the state are unjust, unreasonable, unsafe, improper or inadequate, the commission shall determine the just, reasonable, safe, adequate and proper regulations, practices, equipment, appliances and service thereafter to be in force, to be observed and to be used in such transportation of persons, freight and property and so fix and prescribe the same by order to be served upon every common carrier, railroad corporation and street railroad corporation to be bound thereby; * * *."
Section 50 of said act provides as follows: "If, in the judgment of the commission having jurisdiction, repairs or improvements to or changes in any tracks, switches, terminals, *Page 437 
or terminal facilities, motive power, or any other property or device used by any common carrier, railroad corporation or street railroad corporation in or in connection with the transportation of passengers, freight or property ought reasonably to be made, or that any additions should reasonably be made thereto, in order to promote the security or convenience of the public or employees, or in order to secure adequate service or facilities for the transportation of passengers, freight or property, the commission shall, after a hearing either on its own motion or after complaint, make and serve an order directing such repairs, improvements, changes or additions to be made within a reasonable time and in a manner to be specified therein, and every common carrier, railroad corporation and street railroad corporation is hereby required and directed to make all repairs, improvements, changes and additions required of it by any order of the commission served upon it."
The quotations are from chapter 48 of the Consolidated Laws that went into effect after the order reviewed was made, but so far as the chapter relates to the power of the commission to make said order, it is not materially different from the provisions of chapter 429 of the Laws of 1907, which was in effect at the time the order was made. The acts mentioned were passed pursuant to the power in the people to regulate and control the use of property to promote the general welfare. All property is held subject to the general police power of the state to regulate or control its use to secure the general safety and public welfare. (Bertholf v. O'Reilly, 74 N.Y. 509; Munn v. Illinois.,94 U.S. 113.)
Manure had been loaded upon cars of the relator in its yard at 132d street and Lincoln avenue for many years. On June 23d 1896, the board of health of the city of New York issued to the relator a written permit to load manure upon cars in said yard. It is provided in such written permit that it shall remain in force until revoked by the board of health. Formal written complaint was made to the board of health of the manner in which the relator maintained and loaded its *Page 438 
manure cars in said yard, but no action was taken thereon. On August 5, 1908, complaint was made to the public service commission by a property owners' association, in which complaint attention is called in detail to the manner in which manure cars are loaded in said yard and allowed there to remain, and it is in the complaint asserted that the conduct of the relator's business in said yard is "most offensive to many thousands of passengers on the east side elevated railroads running almost over this spot in the New Haven yards, and also to many thousand people living within a radius of a mile or more." It also asserts that "the nuisance complained of is being maintained in violation of the Sanitary Code, and formal written complaint has been made to the department of health."
An order was at once issued by the commission requiring the relator to satisfy the charges made in the complaint or make answer to the commission. The relator made answer to the complaint in which it said, among other things, that "When the wind is in the right direction people riding in the elevated trains will notice the odor while passing over the loading yard, but it has never been heretofore considered a very serious matter." And it also says: "There is undoubtedly some ground for complaint at certain times as more or less odor must exist."
A hearing was had before the commission in which much testimony was taken. After the evidence upon the hearing was in part presented and an adjournment had been taken to a day named and before such day, and on November 25, 1908, the relator was served with a notice that at a meeting of the board of health of the city of New York on that day the permission granted to the relator to load manure on cars at said yard had been revoked and on the same day an order was issued by the board of health to the relator requiring "That the saturated, decayed plank platform between the tracks where manure is unloaded from carts and wagons be removed, the ground space under the same and adjacent to said platform be cleaned and disinfected and a new tight platform *Page 439 
so elevated and arranged that manure may be dumped into cars without handling and spilling, and that the ground space under said platform and the ground adjacent to the tracks thereat where manure cars stand while being loaded be cemented and so graded as to discharge all liquid matter into a proper sewer connected drain," and on January 6, 1909, the board of health passed a resolution, which was also served upon the relator, a copy of which is as follows: "Resolved, that Notice # 3610 issued by this department November 25th, 1908, requiring the N.Y., N.H. and Hartford R.R. Company to make certain alterations and repairs in its yards at 131st street and Harlem river, Borough of The Bronx, be and the same is hereby modified so as not to require a new type platform so elevated and arranged that manure may be dumped into cars without handling and spilling."
The board of health not only did not take action on the complaint made to it against the relator prior to complaint being made to the commission, but it failed to take any action thereon until the hearing before the commission had proceeded for nearly four months. In the meantime the relator was proceeding under the written permission granted over twelve years before by such board of health. The public service commission proceeded with its hearing after the orders of the board of health, and made the order of which the relator complains.
I do not understand that the order of the commission in any way conflicts with the order of the board of health in any matter essential to the maintenance of public health. While I recognize the superior authority of the board of health in a matter immediately affecting the public health and essential thereto, a consent by the board of health to the loading and transportation of manure in a particular way and manner, the details of which are incidental only to the public health and not important to the maintenance thereof, may not be binding upon the public service commissions.
This court has recently said in People ex rel. South ShoreTraction Co. v. Willcox (196 N.Y. 212, 217), in a matter relating to the consent of a municipal authority to the extension *Page 440 
of the relator's railroad, that "So far as the consent of the municipal authorities to the construction of the proposed line may be limited by conditions which are in conflict with the provisions of the Public Service Commissions law, it is enough to say that the statute must prevail and such conditions are simply nugatory."
Examining the order of the commission in connection with the statute provisions that we have quoted, we find that it immediately affects the construction, stationary equipment, terminal facilities and local transportation of persons and property within the district of the commission making the order. The duty of each commission, as expressly provided, is to examine the railroads within their district and keep themselves informed as to their general condition and the manner in which their lines and property are managed, conducted and operated with respect to the adequacy, security and accommodation afforded by their service, and also with respect to their compliance with all provisions of law, orders of the commission and charter requirements.
It is also provided that the commission after a hearing in respect to the transportation of persons or property within the state shall, if they find that they are unjust, unreasonable, unsafe, improper or inadequate, determine the proper regulations, practices, equipment, appliances and service to be used in such transportation of persons and property.
And it is also provided that whenever the commission in its judgment deems the terminal facilities or any other property construction, apparatus, equipment facilities or devices inadequate it shall direct such repairs, improvements, changes or additions to be made as shall be adequate in their judgment or in connection with the transportation of passengers or property.
Authority for the order made is so clearly included within the plain language of the statute provisions from which we have quoted that it is difficult by discussion or illustration to make it more clear.
It is suggested that the provisions of the statute can only *Page 441 
be invoked for the benefit of passengers and persons actually engaged in the transportation of property. The order does affect the thousands of passengers on the east side elevated railroads and all the persons engaged in loading and handling the manure transported and the numerous employees of the relator immediately engaged about the yard.
It would, however, be too narrow a construction of the Public Service Commissions Law to say that it was simply intended to promote the security or convenience of the employees of transportation companies and their patrons as passengers or the shippers of freight. It should be construed for the benefit of the public generally. The commissions in reliance upon its provisions have exercised authority in the maintenance of flagmen and signals at highway and other railroad crossings where shippers of freight and other patrons and employees of transportation companies had no special interest. They have exercised authority with reference to spark extinguishers, and in determining the use of specified coal or oil to prevent fires on lands adjoining the railroad rights of way, and also in relation to safety devices and many other things that show that the act has generally been considered by the commissions and recognized by the public as having a more extended meaning than as claimed by the relator.
In People ex rel. Delaware Hudson Co. v. Stevens
(197 N.Y. 1) this court say: "We understand that the paramount purpose of the enactment of the Public Service Commissions law was the protection and enforcement of the rights of the public." (p. 9.)
This was not said with reference to the question now under consideration, but it is an expression of the accepted opinion as to the purpose of the enactment of the Public Service Commissions Law.
In Village of Fort Edward v. Hudson Valley R.R. Co. (192 N.Y. 139) this court again said: "The public service commission was not created for the convenience of corporations but for the protection of the public." (p. 150.) *Page 442 
The charter of the city of New York by its express terms should be construed "not as an act in derogation of the powers of the state but as one intended to aid the state in the execution of its duties." (Section 1620.)
It should not be so construed with reference to the powers of its board of health or other departments as to seriously impair the work of the Public Service Commissions Law, which in Peopleex rel. South Shore Traction Company v. Willcox (196 N.Y. 212) this court said "is an advanced step in legislation of great importance to the community." (p. 217.)
A superintendent of streets or a highway commissioner is not without power to direct the repairs to a street or highway simply because the street or highway has become, as maintained, a nuisance. Many illustrations might be given to show that if different departments in the state and in municipalities were wholly prevented from proceeding with the legitimate work of their departments simply because in so doing they would incidentally trespass upon the jurisdiction of a local board of health, their powers in some important matters would be substantially nullified.
The contention of the majority of this court upon being carried to its legitimate conclusion would enable a public service corporation, by so maintaining all of its property as to make the same a nuisance, to avoid the jurisdiction of the public service commissions, in relation to the maintenance of its property, entirely.
On the opinion of Presiding Justice INGRAHAM at the Appellate Division and for the reasons stated by me in this opinion, the order of the Appellate Division should be affirmed, with costs.
HAIGHT, VANN and WILLARD BARTLETT, JJ., concur with GRAY, J.; WERNER, J., concurs with CHASE, J., and CULLEN, Ch. J., concurs in result reached by CHASE, J.
Order reversed, etc. *Page 443