THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE NEW
YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY,
Appellant, v. WILLIAM R. WILLCOX et al., Constituting the
Public Service Commission of the State of New York,
First District, Respondents.

Public service commissions — when commission has no jurisdic-
tion to abate a nuisance affecting the public health, although
committed by a railroad company — the suppression of such a
nuisance is within the jurisdiction of the board of health.

Judicial construction of a general statute should guard against inter-
preting its language so as to create conflict, or contradiction, with the
provisions of an earlier and special statute, if it may stand independently
and with a distinct and useful purpose to accomplish.

Section 45 of the Public Service Commissions Law specifies the general
powers of the commissions.  They are to have " the general supervision
of all common carriers," and to have the power to examine the same
and to keep informed as to their general condition and the manner in
which their lines are managed, " not only with respect to the adequacy,
security and accommodation afforded by their service, but also with
respect to their compliance with all provisions of law, orders of the
commission and charter requirements."  *Held*, that the "provisions of
law " therein referred to are only those contained in the Public Service
Commissions Law.

424 People ex rel. N. Y., etc., R. R. Co. *v.* Willcox. [Jan.,

Statement of case. [Vol. 200.

Boards of health exist to act locally and exclusively for the protection of the health of municipalities. ` The enforcement of all laws applicable to the care, promotion or protection of health in the city of New York is by charter exclusively vested in the department of health. The legislature, in creating the public service commissions, had in contemplation a general system for the supervision and the regulation of common carriers within the state. Powers, differing as the objects proposed to be attained differed, were vested in the two bodies. In their several spheres of action each body has its peculiar and special functions. No intent to interfere with matters committed to the jurisdiction of boards of health is clear from the language of the Public Service Commissions Act, and none should be implied. The two bodies cannot act concurrently. Hence, the public service commission has no jurisdiction to entertain a complaint or to make an order to abate a nuisance affecting the health and comfort of a locality within the city of New York, where is situated the terminal freight yard of a railroad company.
*People ex rel. N. Y., N. H. & H. R. R. Co.* v. *Willcox*, 138 App. Div. 330, reversed.

(Argued November 15, 1910; decided January 24, 1911.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered May 31, 1910, which dismissed a writ of certiorari and confirmed a determination of the defendants requiring the relator to abate a nuisance theretofore maintained by it.

The facts, so far as material, are stated in the opinion.

*Charles M. Sheafe, Jr.,* and *Sherman Cox* for appellant. The Public Service Commissions Law did not authorize the exercise of any functions over railroads which were already vested in the local board of health. (*McCulloch* v. *State*, 4 Wheat. 316; *People* v. *Acton*, 48 Barb. 524; *People ex rel. Wood* v. *Draper*, 15 N. Y. 532; *People* v. *Raymond*, 37 N. Y. 428; *People ex rel. M. S. R. Co.* v. *Tax Comrs.*, 174 N. Y. 417; *Vil. of Fort Edward* v. *H. V. R. R. Co.*, 192 N. Y. 139; *Matter of B., etc., R. Co.* v. *Littleton*, 185 N. Y. 171.)

*Archibald R. Watson, Corporation Counsel* (*Theodore Connoly* and *Clarence L. Barber* of counsel), for the health

department of the city of New York, intervening. The
police power of the state has not been so far committed to
the public service commissioners as to enable them to abate a
purely local nuisance. (L. 1907, ch. 429, § 45; *Brinckerhoff*
v. *Bostwick*, 99 N. Y. 185; *People ex rel. S. S. T. Co.* v.
*Willcox*, 196 N. Y. 212; *Vil. of Fort Edward* v. *H. V.
R. R. Co.*, 192 N. Y. 139; *People ex rel. D. & H. Co.* v.
*Stevens*, 197 N. Y. 1.)

*George S. Coleman* and *H. M. Chamberlain* for respond-
ents. The determination of the respondents was within their
jurisdiction and powers. (L. 1907, ch. 429.) The public
service commission has jurisdiction over the regulation of
transportation. Within that jurisdiction it has the right to
prescribe such reasonable rules and regulations as may be
necessary to properly control the transportation of persons or
property. The fact that in the present case the improper
methods used by the relator in the shipment of manure had
resulted in a nuisance in no wise limits or affects the jurisdic-
tion of the commission to prescribe regulations for the ship-
ment of this kind of freight. (*People ex rel. S. S. T. Co.* v.
*Willcox*, 196 N. Y. 212.) The Public Service Commissions
Law superseded all conflicting or inconsistent provisions of
the Greater New York charter or ordinances adopted pursu-
ant thereto so far as the regulation of railroads is concerned.
(*U. P. Ry. Co.* v. *Cheyenne*, 113 U. S. 516; *People* v.
*Jaehne*, 103 N. Y. 182; *People* v. *Jensen*, 99 N. Y. 355;
181 N. Y. 571; *People ex rel. Hammerstein* v. *O'Gorman*,
124 App. Div. 222; *Lyddy* v. *Long Island City*, 104 N. Y.
218; *Buek* v. *Collis*, 17 App. Div. 465; *People ex rel. Gray*
v. *Scott*, 31 Misc. Rep. 131; 57 App. Div. 630, *People ex
rel. Ross* v. *City of Brooklyn*, 69 N. Y. 605; *Matter of
New York Inst. for Deaf & Dumb*, 121 N. Y. 234; *Barker*
v. *Town of Floyd*, 61 App. Div. 92.) The legislature had
power to authorize and empower the public service commis-
sions to exercise all functions respecting railroads contem-
plated by the Public Service Commissions Law whether or

not the exercise of such functions interfered with the exercise of similar functions by local boards of health or other local boards or officers. (*People ex rel. M. S. R. Co.* v. *Tax Comrs.*, 174 N. Y. 417; 199 U. S. 1; *People* v. *Raymond*, 37 N. Y. 428; *People* v. *Acton*, 48 Barb. 524.)

GRAY, J. This appeal demands our consideration of the jurisdiction of the respondents, who constitute the public service commission, for the first district of this state, to entertain, and to determine upon, a complaint by a citizen of the maintenance by a railroad corporation of a nuisance, in violation of the Sanitary Code of the charter of the city of New York. In August, 1909, there was presented to the commission, in behalf of the South Bronx Property Owners' Association, a complaint, which called the attention of the members "to the unsanitary and offensive manner, in which the New York, New Haven & Hartford Railroad Company maintains and loads its manure cars in its Harlem River yards." It describes in what way the company's acts were offensive to the people resident in, or having to pass through, the neighborhood, and alleged that "the nuisance complained of is being maintained in violation of the Sanitary Code and formal written complaint has been made to the Department of Health." The Harlem river yard referred to is used as the New York city terminal of the railroad company and it does not deny that, in the course of the conduct of that part of its business, offensive odors might be caused. It will be observed that the complaint relates not to the inconvenience, or discomfort, of the company's passengers, nor to any other other portion of its road, than is within the city of New York. At the hearing before the commission, the company moved to dismiss the complaint, "on the ground that the Public Service Act provides especially for matters, which are within the scope of the Public Service Commission, and that this is a distinct matter, which is one for the Board of Health, and a local matter, which is not * * * within the jurisdiction of the Public Service Commission." This motion was renewed

at the close of the case.   The commissioners, in declining to grant it, were of the opinion that the legislature had delegated to the commission "the police power of the State over the agencies described in the Public Service Commissions Law, within its jurisdiction;" that the legislature could "recall any powers of the Board of Health of the City of New York so far as railroads are concerned," and that the provisions of the Public Service Commissions Law indicated that it should "prevail over any conflicting provisions of the Greater New York Charter."   Therefore, the orders, which the board of health had issued, as they held, must yield to those of the commission.   In determining to make the order now complained of, the commission proceeded upon the theory of its jurisdiction extending to the case of a nuisance, affecting the public health of the locality.   In the opinion rendered, the matter was considered from its sanitary aspect.   It was observed that "a very large part of the objection raised by the complainant was caused by the unsanitary manner, in which the railroad has allowed its business to be conducted in the past," and that, "while this traffic is a nuisance to any particular neighborhood, to a certain extent, the situation does not warrant the Commission in ordering this nuisance to be removed to some other location."   Entertaining these views, the commission made the order in question.   The order requires the railroad company, in substance, to remove from its yard a plank platform, from which the manure was loaded into cars; to disinfect the ground under it; to construct a new platform of Belgian blocks, graded so as to discharge all liquid matter into a sewer; to restrict the use of the tracks occupied by manure cars to that purpose only, when used for manure shipments; to place the manure cars not less than 100 feet from the elevated railroad; to load, at one time, not more than four cars; to cover the cars when loaded with a tarpaulin, or canvas, so as to prevent the escape of objectionable odors; to remove the loaded, or partially loaded, cars, at the close of each day's work to some remote part of the yard for the night, and to keep the platform clean by sweeping

and washing after the removal of the cars at the close of the day.

Upon the petition of the railroad company, this relator and appellant, the present writ of certiorari issued to review the action of the respondents. The Appellate Division, in the first department, on hearing the matter, upon the return made by the respondents, dismissed the writ. The learned justices divided in opinion. Those who united in affirming the proceedings of the respondents, conceding that there had been created a public nuisance, held that it did " not follow because the health department had the power to abate the nuisance, that the commission was without jurisdiction to regulate the shipment in the manner it did * * * that the statute conferred upon the commission the power to make the order which it did and it is entirely immaterial whether a nuisance existed or not."

I find myself quite unable to agree in the view taken below of the extent of the jurisdiction of these respondents and I think it was error for that body to have entertained the complaint. If some of the things ordered to be done may be considered to have been within the exercise of the powers confided to the public service commissions, if properly moved thereto in the regulation of the operations of the common carrier, that is no sufficient answer to the objection that the respondents have exceeded their powers, in this instance, in undertaking to abate a local nuisance and have unlawfully intruded upon the jurisdiction appertaining to the department of health to regulate all matters relating to the protection of the health of the city. The board of health had been complained to and had taken cognizance of the matter, pursuant to the authority conferred by the provisions of the Sanitary Code contained in the charter of the city. It was provided in the Greater New York charter that " the authority, duty and powers of the department of health shall extend over the City of New York " and that " all the authority, duty and powers heretofore conferred or enjoined upon the health department, boards of health, health and sanitary

1911.] People ex rel. N. Y., etc., R. R. Co. *v.* Willcox. 429

N. Y. Rep.]        Opinion of the Court, per Gray, J.

officers  *  *  *  are hereby conferred upon and vested in and enjoined upon, and shall hereafter be *exclusively* exercised in the City of New York by the department of health, and board of health, created by this act." (Section 1168.) There was created an elaborate system, or sanitary code, which directed the enforcement of all laws applicable " to the care, promotion, or protection of health ; " vested in the board of health power to exercise all authority necessary to that end and to enforce " all laws relating to cleanliness ; " prescribed punishment for any violation of the Sanitary Code, as for a misdemeanor ; empowered the board of health to abate nuisances ; and declared a nuisance to be " whatever is dangerous to human life or detrimental to health " and, among other things " whatever renders the air  *  *  *  unwholesome." (See title I, chap. XIX, section 1229, Greater New York Charter.) There is no question but what the authority and power to act conferred upon the board of health by the city charter were ample for the purposes intended and declared.    To find them withdrawn as against a railroad corporation there should be very precise language of repeal, or such apparent repugnance, and inconsistency, in the provisions of the Public Service Commissions Law as to require those of the charter to yield to them, as a later law.    To find the charter provisions rendered less exclusive, the powers conferred in the later law should be in such language and of such unmistakable pertinence as to imply their concurrent exercise by the two bodies.    I find none of these conditions to exist and I think that a consideration of the powers vested in the respondents, and, as well, some regard to political conditions, should lead to the conclusion that there could have been no legislative intent to affect, in any wise, the exclusive local jurisdiction of the department of health by the enactment of a general law for the supervision of railroads in the state.    It would be difficult to perceive, either, a reason, or any sound policy, in conferring upon the commissions a jurisdiction concurrent with that of the city's health department.    Judicial construction of a general statute should guard against interpreting its language, so as to create

**430** People ex rel. N. Y., etc., R. R. Co. *v.* Willcox.  [Jan.,

Opinion of the Court, per Gray, J.                    [Vol. 200.

conflict, or contradiction, with the provisions of an earlier and special statute, if it may stand independently and with a distinct and useful purpose to accomplish. I think the Public Service Commissions Law has its distinct and wide field of operation; with powers directed to the accomplishment of a general purpose, which does not involve the promotion of the health of the political subdivisions of the state. Public service commissions were established by chapter 429 of the Laws of 1907 " to provide for the regulation and control of certain public service corporations." By section 5, it was provided that " the jurisdiction * * * of the public service commission in the first district shall extend under this act; (1) to railroads and street railroads lying exclusively within that district * * * (3) to such portion of the lines of any other railroad as lies within that district, and to the person or corporation owning, leasing, operating or controlling the same, so far as concerns the construction, maintenance, equipment, terminal facilities and local transportation facilities, and local transportation of persons or property within that district." Section 6 invested the commission with " all powers heretofore conferred upon the board of rapid transit railroad commissioners," etc. Section 45 specifies the general powers of the commissions. They are to have " the general supervision of all common carriers " and to have the power to examine the same, and to keep informed as to their general condition and the manner in which their lines are managed, " not only with respect to the adequacy, security and accommodation afforded by their service, but also with respect to their compliance with all provisions of law, orders of the commission and charter requirements." Section 49 provides that " whenever the commission shall be of opinion, * * * that the regulations, practices, equipment, appliances, or service of any such * * * railroad corporation * * * in respect to transportation of persons, freight or property within the state are unjust, unreasonable, unsafe, improper or inadequate, the commission shall determine the just, reasonable, safe, ade-

quate and proper regulations, practices, equipment, appliances and service thereafter to be in force, to be observed and to be used in such transportation of persons, freight and property," etc. Section 50 provides that "if, in the judgment of the commission having jurisdiction, repairs or improvements to or changes in any tracks, switches, terminals or terminal facilities, motive power, or any other property or device used by any  *  *  *  railroad corporation  *  *  * in or in connection with the transportation of passengers, freight or property ought reasonably to be made, or that any additions should reasonably be made thereto, in order to promote the security or convenience of the public or employees, or in order to secure adequate service or facilities for the transportation of passengers, freight or property, the commission shall  *  *  *  make and serve an order directing such repairs, improvements, changes or additions to be made," etc. Broad as are the powers conferred by the act, they are, by plain intendment, as I read them, such as are directed, exclusively, to the amplest supervision and regulation of railroad corporations, in such respects as concern their construction, maintenance, equipment, terminal facilities and operations in the transportation of persons and property. The exercise of the powers is intended to be when rendered necessary, in the judgment of the commissions, by reason of unjust, unsafe, or inadequate, regulations, practices, equipment, appliances, or service, "in respect to the transportation of persons, freight, or property." The object of the legislature, as fairly to be deduced from its enactment, was to regulate the management and the operations of common carriers, within the state, in the interest of the public; that is, of the persons who should use the facilities for the transportation of themselves, or of their property; who should serve them; or who should be interested in them, as holders of their capital stock, or obligations. The commissions were given extensive powers; but they should not be extended by implication beyond what may be necessary for their just and reasonable execution. They are not without limits, when directed against

the management, or the operations, of railroads, and the commissions cannot enforce a provision of law, unless the authority to do so can be found in the statute. (See *Village of Fort Edward* v. *Hudson Valley Ry. Co.*, 192 N. Y. 139; *People ex rel. South Shore Traction Co.* v. *Willcox*, 196 ib. 212; *People ex rel. D. & H. Co.* v. *Stevens*, 197 ib. 1.) Nor should they reach out for dominion over matters not clearly within the statute. The " provisions of law," which section 45 refers to, are, obviously, only those which the Public Service Law contained. The section would have been very differently framed, if, by " provisions of law," all the provisions of the statute, or common, law were meant and the commissions were to be general agencies for the prosecution, generally, of violations.

When we consider the order, now, in question, we find it has no pertinence, except as it is directed to the abatement of a nuisance, complained of as affecting the health and comfort of the locality, where is situated the terminal freight yard of the relator. As that locality is within the territorial jurisdiction of the municipal department of health of the city of New York, the question is, whether the court shall say that that jurisdiction has been shorn of the power to act as against a railroad corporation. If it cannot be said that the Public Service Commissions Law was intended to furnish the only law upon the subject, it cannot be deemed to deprive the local board of health of the jurisdiction to act in matters concerning the health of the community. The language of the city charter is explicit that none of its provisions shall be deemed to be repealed, or amended, " unless it be so expressly stated, or the legislative intention to that effect is unmistakable." (Sec. 1618.) By section 1620, it is provided that the act shall be construed " as one intended to aid the state in the execution of its duties by providing  *  *  *  *an adequate scheme of local government for the communities and people affected,* through the instrumentality of the corporate body herein constituted under the name of ' The City of New York.' " The statutes of the state had provided that " there shall continue

1911.]   People ex rel. N. Y., etc., R. R. Co. v. Willcox.   433

N. Y. Rep.]      Opinion of the Court, per Gray, J.

to be local boards of health and health officers in the several
cities, villages and towns of the state ; " which should entertain
jurisdiction to act upon complaints concerning nuisances, or
causes of danger to life and health within the municipality.
(Public Health Law, sections 20, 26.) It was provided by the
Health Law that the laws relating to the boards of health of the
cities of New York, Brooklyn, Buffalo, Albany and Yonkers,
and to their sanitary codes, were to remain. With statutory pro-
visions existing, general and special, it should not be presumed
that the legislature intended to interfere with these administra-
tive departments of municipalities, in the absence of unmistak-
able language. I believe it to be a fundamental concept of our
form of government that, in the local subdivisions of the
state, the people of the locality shall administer their own
local affairs, to the extent not restricted by some constitu-
tional provision. I concede the right of the legislative body
to regulate the acts of local officers. I concede the interest
in the public health of the whole state to be such as to justify
an exercise of the legislative power to regulate administrative
functions in that respect, which have been committed to local
jurisdictions; but it does not follow that officers acting under
the appointment of the state executive and the senate should,
also, be authorized to perform the local functions of a board
of health. There is no pretense, either, of a state policy, or
of the existence of local abuses, which would justify inter-
ference by the state with this administrative department of
the city government, and what other reasonable, or politic,
ground is there for implying an intent to interfere? The
legislature, in creating the public service commissions, had
in contemplation a general system for the supervision and
the regulation of common carriers within the state; which
should promote efficiency in management, operations con-
ducive to the comfort and safety of passengers and employees,
and an equipment and facilities adequate and proper for the
transportation of persons and property. Boards of health
existed to act locally and exclusively for the protection of the
health of municipalities. No intent to interfere with matters

28

committed to their jurisdiction is clear from the language of the act and none should be implied.    Powers, differing as the objects proposed to be attained differed, were vested in the two bodies.    In their several spheres of action, each body had its peculiar and special functions, with machinery supposed to be adequate to reach the evils aimed at and to enforce its mandates for their cure.    To hold that they could act concurrently, not only, would be without justification in the scheme of this statute; it would permit of a clash of authority and an acute situation might arise, as Mr. Justice Scott observed in dissenting below.

Those views lead me to the conclusion that the public service commission was without jurisdiction to entertain the complaint and to make the order in question.

The order of the Appellate Division appealed from should be reversed and that of the public service commission should be vacated and annulled; with costs to the appellant in both courts.

Chase, J. (dissenting).    I am of the opinion that the public service commission had the power to make the order sought to be reviewed by the writ granted herein.

The title of the act establishing the public service commissions included a statement that it was " To provide for the regulation and control of certain public service corporations," and the commissions were by the act given very general powers relating to all matters affecting transportation, and such general powers are not limited because in their exercise they incidentally affect the subject of public health.

The boards of health in the municipalities of the state are given very general powers relating to all matters affecting the public health, and such powers are not limited because in their exercise they incidentally affect the subject of transportation.

It may be conceded that in all matters where the course to be pursued to preserve the public health is directed by the board of health of a municipality that its determination and

1911.] Peopleexrel. N. Y., etc., R. R. Co. v. Willcox. 435

N. Y. Rep.]        Dissenting opinion, per Chase, J.

direction so far as it relates to a matter essential in the judgment of such board to the public health is controlling, and that the power of the board of health in such a case is superior and paramount to that of the public service commissions.

The general powers given to each board are directed to the accomplishment of entirely different objects, and the powers and authority of either cannot be questioned simply because in the exercise of such powers certain acts are required and certain results are accomplished which might have been required and accomplished through the other board.

It is necessary for the purpose of showing that the public service commission had the power to make the order now under consideration to quote from the Public Service Commissions Law (Consolidated Laws, chapter 48, Laws of 1910, chapter 480, Laws of 1907, first act chapter 429).

It is provided by section 2 of said law as follows:
" *    *    *    *    *

" The term ' railroad ', when used in this act, includes every railroad,    *    *    *    operated for public use in the conveyance of persons or property for compensation, with all bridges    *    *    *    switches, spurs, tracks, stations and terminal facilities of every kind used, operated, controlled or owned by or in connection with any such railroad.    *    *    *

" The term ' transportation of property or freight,' when used in this act includes any service in connection with the receiving, delivery, elevation, transfer in transit, ventilation, refrigeration, icing, storage and handling of the property or freight transported."

It is provided by section 4 of said act " *    *    *    Each commission shall possess the powers and duties hereinafter specified, and also all powers necessary or proper to enable it to carry out the purposes of this act."

It is provided by section 5 of said act: " The jurisdiction, supervision, powers and duties of the public service commission in the first district shall extend under this act,

" 1.    *    *    *

" 2.    *    *    *

" 3. To such portion of the lines of any other (street railroads) railroad as lies within that district, and to the person or corporation owning, leasing, operating or controlling the same, so far as concerns the construction, maintenance, equipment, terminal facilities and local transportation facilities, and local transportation of persons or property within that district."

It is provided by section 45 of said act in subdivision 2 thereof as follows: " Each commission shall have the general supervision of all common carriers, railroads, street railroads, railroad corporations and street railroad corporations within its jurisdiction as hereinbefore defined, and shall have power to and shall examine the same and keep informed as to their general condition, their capitalization, their franchises and the manner in which their lines, owned, leased, controlled or operated, are managed, conducted and operated, not only with respect to the adequacy, security and accommodation afforded by their service, but also with respect to their compliance with all provisions of law, orders of the commission and charter requirements."

Section 49 of said act provides as follows: " And whenever the commission shall be of opinion, after a hearing, had upon its own motion or upon complaint, that the regulations, practices, equipment, appliances, or service of any such common carrier, railroad corporation or street railroad corporation in respect to transportation of persons, freight or property within the state are unjust, unreasonable, unsafe, improper or inadequate, the commission shall determine the just, reasonable, safe, adequate and proper regulations, practices, equipment, appliances and service thereafter to be in force, to be observed and to be used in such transportation of persons, freight and property and so fix and prescribe the same by order to be served upon every common carrier, railroad corporation and street railroad corporation to be bound thereby; * * *."

Section 50 of said act provides as follows: " If, in the judgment of the commission having jurisdiction, repairs or improvements to or changes in any tracks, switches, ter-

minals, or terminal facilities, motive power, or any other property or device used by any common carrier, railroad corporation or street railroad corporation in or in connection with the transportation of passengers, freight or property ought reasonably to be made, or that any additions should reasonably be made thereto, in order to promote the security or convenience of the public or employees, or in order to secure adequate service or facilities for the transportation of passengers, freight or property, the commission shall, after a hearing either on its own motion or after complaint, make and serve an order directing such repairs, improvements, changes or additions to be made within a reasonable time and in a manner to be specified therein, and every common carrier, railroad corporation and street railroad corporation is hereby required and directed to make all repairs, improvements, changes and additions required of it by any order of the commission served upon it."

The quotations are from chapter 48 of the Consolidated Laws that went into effect after the order reviewed was made, but so far as the chapter relates to the power of the commission to make said order, it is not materially different from the provisions of chapter 429 of the Laws of 1907, which was in effect at the time the order was made. The acts mentioned were passed pursuant to the power in the people to regulate and control the use of property to promote the general welfare. All property is held subject to the general police power of the state to regulate or control its use to secure the general safety and public welfare. (*Bertholf* v. *O'Reilly*, 74 N. Y. 509; *Munn* v. *Illinois*., 94 U. S. 113.)

Manure had been loaded upon cars of the relator in its yard at 132d street and Lincoln avenue for many years. On June 23d, 1896, the board of health of the city of New York issued to the relator a written permit to load manure upon cars in said yard. It is provided in such written permit that it shall remain in force until revoked by the board of health. Formal written complaint was made to the board of health of the manner in which the relator maintained and loaded its

manure cars in said yard, but no action was taken thereon. On August 5, 1908, complaint was made to the public service commission by a property owners' association, in which complaint attention is called in detail to the manner in which manure cars are loaded in said yard and allowed there to remain, and it is in the complaint asserted that the conduct of the relator's business in said yard is "most offensive to many thousands of passengers on the east side elevated railroads running almost over this spot in the New Haven yards, and also to many thousand people living within a radius of a mile or more." It also asserts that "the nuisance complained of is being maintained in violation of the Sanitary Code, and formal written complaint has been made to the department of health."

An order was at once issued by the commission requiring the relator to satisfy the charges made in the complaint or make answer to the commission. The relator made answer to the complaint in which it said, among other things, that "When the wind is in the right direction people riding in the elevated trains will notice the odor while passing over the loading yard, but it has never been heretofore considered a very serious matter." And it also says: "There is undoubtedly some ground for complaint at certain times as more or less odor must exist."

A hearing was had before the commission in which much testimony was taken. After the evidence upon the hearing was in part presented and an adjournment had been taken to a day named and before such day, and on November 25, 1908, the relator was served with a notice that at a meeting of the board of health of the city of New York on that day the permission granted to the relator to load manure on cars at said yard had been revoked and on the same day an order was issued by the board of health to the relator requiring "That the saturated, decayed plank platform between the tracks where manure is unloaded from carts and wagons be removed, the ground space under the same and adjacent to said platform be cleaned and disinfected and a new tight plat-

1911.]  People ex rel. N. Y., etc., R. R. Co. v. Willcox.  439

N. Y. Rep.]      Dissenting opinion, per Chase, J..

form so elevated and arranged that manure may be dumped into cars without handling and spilling, and that the ground space under said platform and the ground adjacent to the tracks thereat where manure cars stand while being loaded be cemented and so graded as to discharge all liquid matter into a proper sewer connected drain," and on January 6, 1909, the board of health passed a resolution, which was also served upon the relator, a copy of which is as follows : " Resolved, that Notice ♯ 3610 issued by this department November 25th, 1908, requiring the N. Y., N. H. and Hartford R. R. Company to make certain alterations and repairs in its yards at 131st street and Harlem river, Borough of The Bronx, be and the same is hereby modified so as not to require a new type platform so elevated and arranged that manure may be dumped into cars without handling and spilling."

The board of health not only did not take action on the complaint made to it against the relator prior to complaint being made to the commission, but it failed to take any action thereon until the hearing before the commission had proceeded for nearly four months.   In the meantime the relator was proceeding under the written permission granted over twelve years before by such board of health.   The public service commission proceeded with its hearing after the orders of the board of health, and made the order of which the relator complains.

I do not understand that the order of the commission in any way conflicts with the order of the board of health in any matter essential to the maintenance of public health.   While I recognize the superior authority of the board of health in a matter immediately affecting the public health and essential thereto, a consent by the board of health to the loading and transportation of manure in a particular way and manner, the details of which are incidental only to the public health and not important to the maintenance thereof, may not be binding upon the public service commissions.

This court has recently said in *People ex rel. South Shore Traction Co.* v. *Willcox* (196 N. Y. 212, 217), in a matter relating to the consent of a municipal authority to the exten-

440  People ex rel. N. Y., etc., R. R. Co. v. Willcox.  [Jan.,

Dissenting opinion, per Chase, J.  [Vol. 200.

sion of the relator's railroad, that "So far as the consent of the municipal authorities to the construction of the proposed line may be limited by conditions which are in conflict with the provisions of the Public Service Commissions law, it is enough to say that the statute must prevail and such conditions are simply nugatory."

Examining the order of the commission in connection with the statute provisions that we have quoted, we find that it immediately affects the construction, stationary equipment, terminal facilities and local transportation of persons and property within the district of the commission making the order.  The duty of each commission, as expressly provided, is to examine the railroads within their district and keep themselves informed as to their general condition and the manner in which their lines and property are managed, conducted and operated with respect to the adequacy, security and accommodation afforded by their service, and also with respect to their compliance with all provisions of law, orders of the commission and charter requirements.

It is also provided that the commission after a hearing in respect to the transportation of persons or property within the state shall, if they find that they are unjust, unreasonable, unsafe, improper or inadequate, determine the proper regulations, practices, equipment, appliances and service to be used in such transportation of persons and property.

And it is also provided that whenever the commission in its judgment deems the terminal facilities or any other property construction, apparatus, equipment facilities or devices inadequate it shall direct such repairs, improvements, changes or additions to be made as shall be adequate in their judgment or in connection with the transportation of passengers or property.

Authority for the order made is so clearly included within the plain language of the statute provisions from which we have quoted that it is difficult by discussion or illustration to make it more clear.

It is suggested that the provisions of the statute can only

1911.] People ex rel. N. Y., etc., R. R. Co. v. Willcox.    441

N. Y. Rep.]        Dissenting opinion, per Chase, J.

be invoked for the benefit of passengers and persons actually engaged in the transportation of property. The order does affect the thousands of passengers on the east side elevated railroads and all the persons engaged in loading and handling the manure transported and the numerous employees of the relator immediately engaged about the yard.

It would, however, be too narrow a construction of the Public Service Commissions Law to say that it was simply intended to promote the security or convenience of the employees of transportation companies and their patrons as passengers or the shippers of freight. It should be construed for the benefit of the public generally. The commissions in reliance upon its provisions have exercised authority in the maintenance of flagmen and signals at highway and other railroad crossings where shippers of freight and other patrons and employees of transportation companies had no special interest. They have exercised authority with reference to spark extinguishers, and in determining the use of specified coal or oil to prevent fires on lands adjoining the railroad rights of way, and also in relation to safety devices and many other things that show that the act has generally been considered by the commissions and recognized by the public as having a more extended meaning than as claimed by the relator.

In *People ex rel. Delaware & Hudson Co.* v. *Stevens* (197 N. Y. 1) this court say: "We understand that the paramount purpose of the enactment of the Public Service Commissions law was the protection and enforcement of the rights of the public." (p. 9.)

This was not said with reference to the question now under consideration, but it is an expression of the accepted opinion as to the purpose of the enactment of the Public Service Commissions Law.

In *Village of Fort Edward* v. *Hudson Valley R. R. Co.* (192 N. Y. 139) this court again said: "The public service commission was not created for the convenience of corporations but for the protection of the public." (p. 150.)

442 People ex rel. N. Y., etc., R. R. Co. *v.* Willcox. [Jan.,

Dissenting opinion, per Chase, J. [Vol. 200.

The charter of the city of New York by its express terms should be construed "not as an act in derogation of the powers of the state but as one intended to aid the state in the execution of its duties." (Section 1620.)

It should not be so construed with reference to the powers of its board of health or other departments as to seriously impair the work of the Public Service Commissions Law, which in *People ex rel. South Shore Traction Company* v. *Willcox* (196 N. Y. 212) this court said "is an advanced step in legislation of great importance to the community." (p. 217.)

A superintendent of streets or a highway commissioner is not without power to direct the repairs to a street or highway simply because the street or highway has become, as maintained, a nuisance. Many illustrations might be given to show that if different departments in the state and in municipalities were wholly prevented from proceeding with the legitimate work of their departments simply because in so doing they would incidentally trespass upon the jurisdiction of a local board of health, their powers in some important matters would be substantially nullified.

The contention of the majority of this court upon being carried to its legitimate conclusion would enable a public service corporation, by so maintaining all of its property as to make the same a nuisance, to avoid the jurisdiction of the public service commissions, in relation to the maintenance of its property, entirely.

On the opinion of Presiding Justice Ingraham at the Appellate Division and for the reasons stated by me in this opinion, the order of the Appellate Division should be affirmed, with costs.

Haight, Vann and Willard Bartlett, JJ., concur with Gray, J.; Werner, J., concurs with Chase, J., and Cullen, Ch. J., concurs in result reached by Chase, J.

Order reversed, etc.