permanently and physically obstructed by the wall erected a few feet to the north of her property and in said block, I am of the opinion that she has presented a case within the provisions of the Street Closing Act, supra, and that she is entitled to present her claim for damages to commissioners to be appointed as provided by said act. This court, of course, does not at the present time pass upon the extent or the existence of any actual damage. The question is: Has she established a legal right to have her claim litigated before a lawful tribunal? We think she has, and that for the reasons stated in People ex rel. Winthrop v. Delany, supra, the writ prayed for should have been allowed.

It follows therefore that the order appealed from should be reversed, with $10 costs and disbursements to the appellant, and the motion granted, with $50 costs. All concur.

---

(162 App. Div. 371)

### In re MENDEL. (No. 5778.)

### In re PUBLIC SERVICE COMMISSION.

(Supreme Court, Appellate Division, First Department. May 15, 1914.)

RAILROADS (§ 9*)—PUBLIC SERVICE COMMISSION—STATUTORY AUTHORITY.

　　Public Service Commission Law (Consol. Laws, c. 48) § 50, authorizing the commission, after hearing, to order repairs, improvements, changes, or additions in terminal facilities, equipment, or device for use by any common carrier for the transportation of passengers or property, does not empower the commission to inquire into the business of a corporation maintaining, as lessee of space in a railroad station, a checking room for hire.

　　[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 12–19; Dec. Dig. § 9.*]

Appeal from Special Term, New York County.

Application of the Public Service Commission for the First District for an order directing W. H. Mendel to show cause why he should not be committed to jail for refusing to answer legal questions and to produce books of account and papers in connection with the case pending before the Commission. From an order adjudging W. H. Mendel guilty of contempt, he appeals. Reversed.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOWLING, and HOTCHKISS, JJ.

Alger & Simpson, of New York City (George W. Alger, of New York City, of counsel), for appellant.

Arthur Du Bois, of New York City (George S. Coleman, of New York City, on the brief), for respondent.

CLARKE, J. The Public Service Commission for the First District on September 9, 1913, on its own motion, adopted a resolution for a hearing to be held for the purpose of determining whether the New York Central & Hudson River Railroad Company should be ordered to maintain one or more offices or departments, suitably located in the Grand Central Station, in which packages may be checked by those us-

---

ing the trains of the New York Central & Hudson River Railroad Company or trains of the New York, New Haven & Hartford Railroad Company for a charge to be less than 10 cents per package.

Upon the hearing it appeared that the New York Central & Hudson River Railroad Company did not maintain any parcel checking room, but that its lessee, W. H. Mendel, Incorporated, did conduct such parcel rooms, using about 2,800 square feet of floor space, for which it paid an annual rental of $35,000.

W. H. Mendel was called as a witness. He and his father for 38 years have operated the business of a parcel room located in the Grand Central Station building. It was conducted by his father, Jacob Mendel, from 1875 to 1888, in which year he succeeded him. In 1912 the corporation of Wm. H. Mendel, Incorporated, was organized to continue and carry on certain businesses theretofore conducted by him, which included the parcel room business, a candy booth, and a candy store in the Grand Central Terminal, and a restaurant at 430 Fourth avenue. A lease was entered into between the said railroad companies and W. H. Mendel, Incorporated, on February 17, 1913, for two parcel rooms for the term of seven years at the annual rental of $35,000 a year, with a provision that the lessor should have the right to terminate said lease any time by giving 60 days' notice of its intention to do so.

Having testified that the capital stock of the company was $50,000, that the regular charge for checking a parcel for 24 hours was 10 cents, that the parcel rooms were open for 24 hours a day and for seven days during the week, that he owned 498 of the 500 shares, the other two being owned one by his wife and the other by his daughter, under the advice of counsel he refused to answer the following questions:

1. What is the total number of employés that W. H. Mendel, Incorporated, have engaged in the parcel checking business at the Grand Central Station?

2. What were the total gross receipts of W. H. Mendel, Incorporated, from the parcel checking business at the Grand Central Station for the month of March, 1913?

3. What were the total gross receipts of W. H. Mendel, Incorporated, from the parcel checking business at the Grand Central Station for the month of April, 1913?

4. I ask the same question for the month of May, 1913?

5. I ask the same question for the month of June?

6. I ask the same question for the month of July?

7. I ask the same question for the month of August?

8. I ask the same question for the month of September?

9. Mr. Mendel, what was the total expense of conducting the parcel checking business in the Grand Central Station of W. H. Mendel, Incorporated, in the month of March, 1913?

10. I ask the same question as to the months of April, May, June, July, and August, 1913?

And he further refused to produce the journals, cashbooks, ledgers, and other books of account relative to the business conducted by his corporation. Thereafter the Public Service Commission obtained an order to show cause why he should not be committed to jail for refusing to answer said questions and produce said books and papers, and thereupon such proceedings were had that the order, here appealed from, adjudging him in contempt and committing him to jail, was entered.

The attitude of the witness was taken upon the advice of counsel that the jurisdiction of the Public Service Commission did not extend to the matters inquired of. As stated upon the hearing before the commission:

"Our position is that this parcel room matter is not a matter of transportation in any sense of the word; that the jurisdiction of this commission over carriers and over rates is limited by specific terms in the act to the rates for transportation and the rates affecting transportation; that the jurisdiction of the commission does not extend to conveniences, such as parcel rooms and bootblack stands and candy stores and magazine and newspaper stands."

The question is: Did the witness refuse to answer legal and pertinent questions? The answer involves the determination of the jurisdiction of the Public Service Commission over the matter inquired of. The learned counsel for the commission claims that section 50 of the Public Service Commission act (Consol. Laws, c. 48) is broad enough to include this matter.

"Section 50. Power of commissions to order repairs or changes.—If in the judgment of the commission having jurisdiction, additional tracks, switches, terminals or terminal facilities, stations, motive power, or any other property, construction, apparatus, equipment, facilities or devise for use by any common carrier, railroad corporation or street railroad corporation in or in connection with the transportation of passengers or property ought reasonably to be provided, or any repairs or improvements to or changes in any thereof in use ought reasonably to be made, or any additions or changes in construction should reasonably be made thereto in order to promote the security or convenience of the public or employés, or in order to secure adequate services or facilities for the transportation of passengers or property, the commission shall, after a hearing either on its own motion or after complaint, make and serve an order directing such repairs, improvements, changes or additions to be made within a reasonable time and in a manner to be specified therein, and every common carrier, railroad corporation and street railroad corporation is hereby required and directed to make all repairs, improvements, changes and additions required of it by any order of the commission served upon it."

Nothing in said clause justifies the questions.

In People ex rel. New York, New Haven & Hartford R. Co. v. Willcox, 200 N. Y. 423, 94 N. E. 212, Judge Gray said:

"Broad as are the powers conferred by the act, they are, by plain intendment, as I read them, such as are directed, exclusively, to the amplest supervision and regulation of railroad corporations, in such respects as concern their construction, maintenance, equipment, terminal facilities, and operations in the transportation of persons and property. The exercise of the powers is intended to be when rendered necessary, in the judgment of the commissions, by reason of unjust, unsafe, or inadequate regulations, practices, equipment, appliances, or service, 'in respect to the transportation of persons, freight, or property.' The object of the Legislature, as fairly to be deduced from its enactment, was to regulate the management and the operations of common carriers within the state, in the interest of the public; that is, of the persons who should use the facilities for the transportation of themselves, or of their property, who should serve them, or who should be interested in them, as holders of their capital stock, or obligations. The commissions were given extensive powers; but they should not be extended by implication beyond what may be necessary for their just and reasonable execution. * * * . Nor should they reach out for dominion over matters not clearly within the statute."

W. H. Mendel, Incorporated, was not a common carrier of either passengers or freight. It was the lessee of space in the Grand Cen-

tral Station, where it acted as bailee for hire for persons who had ceased to be passengers or had not yet become passengers. It had no more to do with transportation than did the barber who shaved the late or prospective passenger, the bootblack who cleaned his shoes, the flower vendor, the newspaper boy, the candy man, or restaurant keeper who ministered to his needs or fancies. A temporary depository for packages is neither compulsory or necessary. It is a mere convenience, similar to the other conveniences enumerated. There has been an hotel erected upon the property of the railroad company, and there is in contemplation the erection of a private club. While it might be entirely proper, in each instance, to inquire into the terms of the lease for such properties between the railroad and the corporation running the hotel or club, is it reasonable to suppose that it would be within the jurisdiction of the commission to investigate the private affairs of such lessee corporations as to the prices they charged to, or the profits they made from, those voluntarily seeking the conveniences tendered?

We are unable to perceive the legality, pertinency, or relevancy of any of the questions propounded to the witness, which he refused to answer, to any matter within the jurisdiction of the Public Service Commission over the railroads using the Grand Central Station as common carriers. We think therefore that the witness was entirely within his rights in refusing to aid in an unwarranted inquisition into the financial affairs of the private business corporation of which he was the president.

The order adjudging him in contempt and directing his committal to the jail should therefore be reversed, with $10 costs and disbursements to the appellant, and the motion denied, with $10 costs. All concur.